**Chadrick S. FORD, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–97–174–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 10, 1998.

Scott Brown, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Tanya S. Dahoney, Kyle Whitaker, David Hagerman, Asst. Crim. Dist., Fort Worth, for Appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION ON STATE PROSECUTING ATTORNEY'S PETITION FOR DISCRETIONARY REVIEW

RICHARDS, Justice.

Under rule 50, we have reconsidered our prior opinion upon the State Prosecuting Attorney's petition for discretionary review. TEX.R.APP. P. 50. We withdraw our opinion and judgment of June 11, 1998 and substitute the following.

Chadrick S. Ford appeals from his convictions for murder and attempted murder. The sole issue presented is whether the trial court's erroneous refusal of a jury shuffle should be disregarded as harmless error. Because our legislature has provided the parties in felony trials a substantial and mandatory and absolute right of one jury shuffle, and because we cannot disregard the error in the instant case as harmless, we reverse appellant's convictions and remand the case for a new trial.

### THE JURY SHUFFLE IS A STATUTORY RIGHT

■ A trial judge has no discretion to deny a timely requested jury shuffle. Article 35.11 of the Texas Code of Criminal Procedure provides:

> The trial judge, on the demand of the defendant or his attorney, or of the State's counsel, *shall* cause a sufficient number of jurors from which a jury may be selected to try the case to be randomly selected from the members of the general panel drawn or assigned as jurors in the case. The clerk shall randomly select the jurors by a computer or other process of random selection and *shall* write or print the names, in the order selected, on the jury list from which the jury is to be selected to try the case. The clerk shall deliver a copy of the list to the State's counsel and to the defendant or his attorney.

Tex.Code Crim. Proc. Ann. art. 35.11 (Vernon Supp.1998) (emphasis added).

■ The Texas Court of Criminal Appeals has mandated that consistent with the purpose of the statute—an assurance of the compilation of a random list of jurors—the jury shuffle is an "absolute right" available to either party. See *Jones v. State*, 833 S.W.2d 146, 148 (Tex.Crim.App.1992). It is often employed as a strategic tool by the prosecutors or defense attorneys who believe a random shuffle of the assigned venire might result in a more favorable positioning of the members of the general panel, such that peremptory strikes or challenges for cause might then be used to obtain more favorable jurors. Characteristic of its high ethical standards, the Tarrant County District Attorney's Office confesses error and admits the trial court was under a mandatory obligation to shuffle the venire in the instant case, but failed to do so. Notwithstanding its confession, however, the State urges that the error be disregarded as harmless under appellate rule 44.2(b), i.e., an error which did not affect appellant's substantial rights.

### The Rules

In determining whether this error requires a new trial, we turn to our recently enacted appellate Rules:

44.2. Reversible Error in Criminal Cases
(a) *Constitutional Error*. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
(b) *Other Errors*. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

Tex.R.App. P. 44.2.

The official comments following the rule indicate that paragraph 44.2(a) was amended

to limit its standard of review to constitutional errors that are subject to harmless error review. Paragraph 44.2(b) is new and is taken from Federal Rule of Criminal Procedure 52(a), without substantive change.

Federal Rule 52, entitled "Harmless Error and Plain Error," provides:
(a) Harmless error.—Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
(b) Plain Error.—Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Fed. R. Crim. P. 52.

### Constitutional Error?

■ As noted above, Rule 44.2(b) provides that, other than constitutional error, "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). Therefore, we first must determine whether the erroneous denial of a jury shuffle is constitutional error.

The right to a jury shuffle is not granted in either our state or federal constitutions, and is purely a creation of the legislature. Thus, the erroneous denial of a shuffle does not constitute the denial of a constitutional right. *See Harris v. Estelle*, 487 F.2d 1293, 1296 (5th Cir.1974); *Yanez v. State*, 677 S.W.2d 62, 68 (Tex.Crim.App.1984).

### Error Affecting Substantial Rights?

■ Our inquiry does not end with the determination that the denial of a jury shuffle is constitutionally permissible. Rule 44.2(b) does not read, "error that does not affect *constitutional rights*" must be disregarded; rather, it provides "error ... that does not affect *substantial rights* must be disregarded." Tex.R.App. P. 44.2(b) (emphasis added).[1] It must be the case that the term "substantial rights" is not synonymous with "constitutional rights," or the same words would have been used by the rule's drafters.[2]

---

1. In its thoughtful petition for discretionary review, the Office of the State Prosecuting Attorney acknowledges that article 35.11 *does* constitute a substantial right.

2. All constitutional rights are substantial rights; however, not all substantial rights are constitutional rights.

Accordingly, our next inquiry must be whether the error affected a substantial right. The Court of Criminal Appeals has recently interpreted "substantial right" as follows: "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 270–71 (Tex.Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557, 1572 (1946)); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd). Determining whether an error had a substantial and injurious effect on a verdict is normally a difficult task for a reviewing court, but when, as here, the error concerns the formation of the jury itself, as opposed to error occurring in the presence of the jury, it is next to impossible to measure the harm from the face of the record. The State cites several federal cases involving evidentiary error and jury deliberation error in support of its claim that the lack of harm can be measured. However, none of those cases involved the obviously inherently difficult task of measuring procedural error during jury selection. The difficulty of conducting a harm analysis on this kind of error is the reason the Court of Criminal Appeals held "[i]t is automatic reversible error for the trial court to refuse a timely urged motion by the accused or his counsel to shuffle the names of the members of the jury panel." *Yanez*, 677 S.W.2d at 69. The question we must address is whether the same result is required following our partial adoption of the federal standard in Rule 44.2(b).

We find the federal case of *Hatchett v. Government of Guam*, 212 F.2d 767 (9th Cir.), *cert. dism'd by* 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1954), instructive. The Ninth Circuit Court of Appeals held in *Hatchett* that the defendant was entitled to relief under the "plain error" rule, i.e., a substantive procedural pretrial statutory rule violation, without a showing of harm and absent constitutional error. Mr. Hatchett was tried in Guam for involuntary manslaughter under the penal code of that territory. On appeal, the Ninth Circuit Court of Appeals confronted several issues of trial procedure, including whether the defendant was entitled to a jury trial and indictment by a grand jury. Because Guam was declared an unincorporated territory of the United States, the court rejected the claims that Mr. Hatchett's rights under the United States Constitution were violated. *Id.* at 769. Nevertheless, the court reversed the conviction and remanded the case for retrial because United States Federal Rules governing criminal prosecutions in Guam required indictment for offenses carrying a penalty range in excess of one year, including involuntary manslaughter. In reversing the case, the reviewing court did not attempt to determine the error's affect on the verdict, no doubt because such analysis was impossible given that the error occurred before trial. Because the error involved the violation of a mandatory procedure, the Ninth Circuit was unable to determine whether the error had affected a substantial right.

For a similar reason, we hold that the term "substantial rights" encompasses not only constitutionally based rights, but also certain statutory rights—here a right to a jury shuffle made mandatory by the legislature. To hold that this mandatory right established by our state legislature can be ignored by trial judges simply because it is not a right guaranteed under our state and federal constitutions, is to invite judicial activism of the worst sort—the judicial branch ignoring mandatory directives of the legislature in matters of criminal trial procedure. One obvious consequence of disregarding the denial of the requested jury shuffle in the instant case would be to transform what heretofore has always been considered the mandatory duty of the trial judge into a completely discretionary act. If the denial of a required shuffle is not reversible, what then would prevent a judge from creating his own rules of criminal procedure? To allow the rules of criminal procedure to be so balkanized would not only invade the province of the legislature, but would create havoc among practitioners, who would not know whether procedures, which the legislature has made mandatory, would or would not be honored by the judge presiding in their case.

The Office of the State Prosecuting Attorney suggests this result is not likely given

the trial judges' "moral consciences" and the duty imposed by their oath of office to follow the law. In those instances where the conduct of a judge in failing to follow a mandatory procedure is either "willful or persistent," the State suggests the matter could be dealt with through disciplinary sanctions by the State Commission on Judicial Conduct. See TEX. CONST. art. V, § 1–a. We do not believe disciplinary sanctions in situations such as this would be either warranted or effective. In many cases it will not be clear why the trial court violated a procedural requirement. We do not presume the trial judge in the instant case acted in bad faith; in fact, we presume the failure to grant counsel's request for a jury shuffle in our case was the result of a simple mistake. Nevertheless, to hold that a mandatory and absolute procedural right can be disregarded by trial judges would, at the very least, discourage the vigilant safeguarding of mandatory procedural rights and, at the very worst, encourage judicial activisim. Moreover, disciplinary sanctions by the State Commission on Judicial Conduct would do nothing to assist a defendant whose "absolute" statutory right had been violated. In short, we believe it is more appropriate that appellate courts, rather than the State Commission on Judicial Conduct, remedy such violations.

The State urges us to consider the following factors in undertaking a harm analysis: (1) whether the defense made challenges to the array (here there was no challenge); (2) whether objections were made to questions asked by the State during its jury voir dire (defense counsel made only two); (3) whether the defense was limited either in time or questions asked (here the defense was under no such limitations); (4) whether appellant's challenges for cause were granted (all ten of appellant's challenges for cause were granted); and (5) how many of counsel's trial objections were sustained by the trial court (23 out of 30 here). The State also alleges that because it is mathematically possible for a reshuffle to produce a jury list identical to the original jury list, we should refrain from automatic reversal.

In fact, in its petition for discretionary review the Office of the State Prosecuting Attorney suggests an additional factor: whether the record reflects the seating of the prospective jurors was already random, such that a shuffle was not required. The State argues that if this factor is given its proper weight by reviewing courts, reversals for the improper denial of jury shuffles would be rare because venire selection procedures employed by the courts today, as a general rule, automatically result in a randomly selected venire. Put another way, the State argues that if the seating on the venire was random before the requested shuffle, the goal of article 35.11—the assurance of randomness— was already met, making the jury shuffle superfluous. We do not agree.

■ A jury shuffle is an "absolute" right, Jones v. State, 833 S.W.2d at 148, and the decision to grant a shuffle should not turn on whether the trial court or appellate court believes the seating of the venire was already the result of a random process. Moreover, "randomness" in the distribution of a venire is very difficult to measure, particularly on appeal. The State suggests that "inferences of non-randomness," such as blocks of jurors of certain races, or occupations, as where "the jury panel consisted of employees of the Sheriff's Department," could reasonably lead a court to conclude the jurors were not seated randomly and that reversal was required. That argument, however, is based on a confused understanding of what randomness is. One could expect that a random seating of a venire could easily result in blocks of prospective jurors with certain occupations, or racial similarities, in similar fashion to a poker player being dealt "good" or "bad" hands of cards. For example, a random shuffle of five cards in a game will result in a full-house on the deal in 1 in 693 hands. See HORACE LEVINSON, CHANCE LUCK AND STATISTICS 129 (1963). A card playing prosecutor's "inference of non-randomness," when confronting an opponent who was dealt a full-house, would not likely impress a mathematician or casino manager, and the concept has even less appeal in the area of jury selection because there are a myriad of factors and combinations of factors for which litigants might desire randomness, e.g. occupation, age, dress, ethnicity, sex, education, political

and religious affiliation. We decline to adopt such an analysis.

■ Factors such as the number of challenges to the array, the length of voir dire, or the number of trial objections sustained by the court bear no relation to the denial of a jury shuffle. As to the issue of mathematical probabilities, it can only be said that there is a high probability that the composition of the jury would have been different had the shuffle been granted. The State's attempt to formulate factors under which to conduct a harm analysis exemplifies the difficulty of conducting a harm analysis in this situation. *Cf. Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim.App.1997) (holding that "where the error involved defies analysis by harmless error standards, ... then the error will not be proven harmless beyond a reasonable doubt....."). Just as a defendant cannot point to passages in the record to show harm from the denial of a jury shuffle, neither can the State demonstrate lack of harm through factors such as tabulating the number of trial objections sustained by the trial judge.

The State cites *Harris*, 487 F.2d at 1296, for the proposition that even if the harm analysis the State requests is not employed, reversal is not required; however, *Harris* was a collateral federal attack on a state judgment. The only issue before the reviewing court there was whether the denial of a jury shuffle required reversal under our federal constitution. *Id.* As noted above, we agree with the State that the shuffle is not a right under either our state and federal constitutions. Our decision turns on our holding that the jury shuffle is a substantial right provided by the Texas legislature.

Because a substantial right was violated when the trial court denied appellant's requested jury shuffle, and because we cannot measure whether this error had a substantial or injurious effect on the jury's verdict, we cannot disregard the error as harmless. We, therefore, reverse appellant's convictions and remand the case to the trial court for new trial.