**Chadrick S. FORD, Appellant,**

v.

**The STATE of Texas.**

**No. 1649–98.**

Court of Criminal Appeals of Texas.

May 1, 2002.

Scott Brown, Fort Worth, for Appellant.

Tanya S. Dohoney, Asst. DA, Fort Worth, Jeffrey L. Van Horn, First Asst. S.A., Matthew Paul, State's Atty., Austin, for State.

### OPINION

KELLER, P.J. delivered the opinion of the Court in which WOMACK, KEASLER, and HERVEY, JJ., joined.

Appellant was convicted of murder and four counts of attempted murder and sen-

tenced to the maximum punishment in each case. On appeal, appellant contended that the trial court erred in denying his request for a jury shuffle. The State conceded error but argued that the error was harmless under Texas Rule of Appellate Procedure 44.2(b). The Court of Appeals reversed, holding that the jury shuffle was a "substantial right" that was denied and holding that the error could not be disregarded as harmless because the appellate court was unable to measure whether the error had a substantial or injurious effect on the jury's verdict.[1]

The State[2] filed petitions for discretionary review, arguing that the Court of Appeals erred in its harm analysis. We will reverse the Court of Appeals.

### I.

Texas Code of Criminal Procedure, Article 35.11 requires that the seating order of the venire be randomly shuffled at the request of either party.[3] Because the right to a jury shuffle is statutory in nature, any error in connection therewith must be evaluated for harm under the standard for nonconstitutional errors.[4] That standard provides: "Any other error, defect, irregularity, or variance that does

1. The opinion from which the State petitions this Court was issued under Rule 50, Texas Rules of Appellate Procedure.

2. Both the Tarrant County District Attorney and the State Prosecuting Attorney filed petitions that were granted. We will refer to them both collectively as the "State."

3. Article 35.11 provides:

   The trial judge, on the demand of the defendant or his attorney, or of the State's counsel, shall cause a sufficient number of jurors from which a jury may be selected to try the case to be randomly selected from the members of the general panel drawn or assigned as jurors in the case. The clerk

shall randomly select the jurors by a computer or other process of random selection and shall write or print the names, in the order selected, on the jury list from which the jury is to be selected to try the case. The clerk shall deliver a copy of the list to the State's counsel and to the defendant or his attorney.

4. The error is subject to a harm analysis because the right to a jury shuffle does not fall within the very limited class of rights immunized from a harm analysis by the United States Supreme Court. *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997)(only errors that the Supreme Court has designated as "structural" are categorically immune from a harmless error analysis).

not affect substantial rights must be disregarded." [5]

When the admission of evidence is at issue, a "substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." [6] Or conversely, a substantial right is not affected when, "the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight affect." [7] Neither party has a burden to prove or disprove harm; rather, it is the responsibility of the reviewing court, once it concludes there was error, to determine whether the error affected the judgment.[8] It must do so without the benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial.[9]

## II.

■■■ According to the Court of Appeals, holding the violation of a mandatory statute harmless would invite judicial activism of the worst sort and transform a mandatory duty of the trial court into a completely discretionary act. But this logic would re-establish automatic reversible error, contrary to the language and purpose of Rule 44.2 and contrary to our opinion in *Cain*.[10] Under our harmless error rule the violation of a mandatory statute does not, by itself, call for the reversal of a conviction. If an appellate court is in

"grave doubt" about the harmlessness of the error, then the judgment must be reversed.[11] But if the record shows that a defendant was not harmed by an error, then the error must be disregarded.

With some types of error, the absence of something in the record can be sufficient to show that a defendant was not harmed. *Jones* is a case in point.[12] *Jones* concerned the erroneous grant of a State's challenge for cause. We said, "the erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury." [13] This holding should be read in light of the right that is ordinarily at stake in challenges for cause: that the jurors who serve be qualified.[14] There is no right to have any particular person on the jury; rather, trial courts should follow a policy of liberally granting challenges for cause.[15] The erroneous granting of a challenge for cause, then, will not result in harm to the defendant so long as the jury actually selected was composed of qualified persons. And we presume that jurors are qualified absent some indication in the record to the contrary. In essence, the record shows that the defendant is not harmed by such an error when it contains no indication that those who served on the jury were unfit for duty.

The Court of Appeals also found measuring harm from errors involving the formation of the jury to be next to impossible.

---

5. Texas Rule of Appellate Procedure 44.2(b).

6. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

7. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim.App.1998).

8. *Johnson v. State*, 43 S.W.3d 1, 4–5 (Tex. Crim.App.2001).

9. *Id.* at 5.

10. *Cain*, 947 S.W.2d at 264.

11. *Johnson*, 43 S.W.3d at 4.

12. *Jones v. State*, 982 S.W.2d 386, 393 (Tex. Crim.App.1998).

13. *Id.* at 394.

14. *Id.* at 393.

15. *Id.*

It is true that formulations that focus on the outcome of a case are not quite apt in the context of a case in which the jury itself is the object of the error. As in *Jones*, we should consider what right is protected by the statute. The inquiry in this case is whether the jury shuffle statute's purpose was thwarted by the error.

### III.

The jury shuffle is designed to ensure the compilation of a random list of jurors.[16] Either party can ask for a shuffle, and only one shuffle is required, regardless of which party makes the request.[17] So, while the jury shuffle may sometimes be used by the parties as a strategic tool, the purpose of the statute is merely to ensure that the members of the venire are listed in random order. The applicable rules and statutes already require that panels be listed randomly from the outset. The jury pool is drawn from the names of all persons currently registered to vote, all citizens currently holding a valid driver's license, and all citizens currently holding a valid personal identification card.[18] Randomness is ensured by statutes directing the drawing of names, by the certification of the jury list, and by provisions for electronic or mechanical methods of selection.[19] The rules by which individual panels are drawn further serve to achieve randomness.[20]

Because the law requires that venire panels be assembled in random order, a trial judge's failure to order a shuffle does not, by itself, indicate a nonrandom listing of the venire. Nothing in the record of this trial indicates that the procedures outlined in the applicable statutes and rules were disregarded, that the panel was reordered after being assembled, or that the process of assembling a jury panel was subverted in some fashion to achieve a nonrandom listing of the venire. Under the record in the present case, the error in refusing to allow a jury shuffle has been shown to be harmless under Rule 44.2(b).

The judgment of the Court of Appeals is reversed, and the trial court's judgment is affirmed.[21]

---

**16.** *Jones v. State,* 833 S.W.2d 146, 148 (Tex. Crim.App.1992).

**17.** *Id.* at 149.

**18.** Texas Government Code § 62.001.

**19.** Texas Government Code §§ 62.004, 62.006, 62.011.

**20.** Texas Code of Criminal Procedure, Article 33.09; Texas Rules of Civil Procedure 223, 224.

**21.** The dissenting opinion perceives inconsistency in our interpretations of Rule 44.2(b), but any such complaints should be directed to the United States Supreme Court. That is where the language in all of those cases came from, in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the leading Supreme Court case on non-constitutional error. We do not find the various phrases used by the Supreme Court to describe the non-constitutional standard at all inconsistent or confusing. And some of the differences in application reflect the different natures of the errors involved. Contrary to the dissenting opinion's implication, our holding does not require that appellate courts always look to the effect of the error on the jury's verdict. How an error affects a substantial right will vary depending upon the type of error in question. For example, in the present case, the right in question is the randomness of the jury panel—which does not require attempting to ascertain the error's effect on a jury verdict.

Unhappy with the rule we have, the dissent re-writes Rule 44.2(b) and calls it a "new interpretation." Under this interpretation, "substantive" means "of major or practical importance," and reversal would result from an error "of practical importance" to a defendant. With this rule, virtually all errors would result in reversal—as this case illustrates. This is surely not what the Legislature intends.

HOLCOMB, J., filed a dissenting opinion in which PRICE, and JOHNSON, J., joined.

MEYERS, J., concurred in the result.

COCHRAN, J., did not participate in the decision of the Court.

HOLCOMB, J., filed a dissenting opinion, in which PRICE and JOHNSON, JJ., joined.

I respectfully dissent. In my view, the majority interprets and applies the judicially created harmless error rule in a way that effectively repeals the legislatively granted right to a jury shuffle, a right belonging to both the State and the defendant. In so doing, the majority exceeds the authority the Legislature gave this Court to promulgate rules of appellate procedure.[1] In addition, I am concerned about the Court's recent treatment of statutory rights. See, e.g., *Johnson v. State*, 72 S.W.3d 346 (Tex.Crim.App., 2002)(holding that denial of a defendant's statutory right to a written jury waiver is harmless if the preprinted judgment form recites that the defendant waived a jury); *Ex*

*parte Graves*, 70 S.W.3d 103 (Tex.Crim. App., 2002)(holding that a death row inmate's statutory right to "competent" counsel does not really mean counsel that performs competently); *Ex parte McCain*, 67 S.W.3d 204 (Tex.Crim.App.2002) (overruling a century of case law and holding that a defendant denied his statutory right to counsel may not raise that claim via habeas corpus).

## I

I will now attempt to explain what I believe is the proper way to analyze the issue presented in this case. I begin with a review of the relevant facts. A Tarrant County grand jury indicted appellant, Chadrick S. Ford, for murder (one count) and attempted murder (four counts). See Tex. Pen.Code §§ 15.01(a) & 19.02(b). Appellant opted for a jury trial. Immediately before voir dire, appellant timely requested, pursuant to Article 35.11 of the Texas Code of Criminal Procedure, that the names of the members of the jury panel assigned to his case be shuffled and the panel reseated in a new and random order.[2] The trial court denied appellant's

---

The dissenting opinion contends that the literal wording of the statute unambiguously provides a strategic tool to the accused. We disagree. Nowhere in the statute are the words "strategic tool" used, and this interpretation is contradicted by the fact that only *one* shuffle is authorized and it can be effected by *either* the defendant or the State. The dissent further contends that we recognized in *Wilkerson v. State*, 681 S.W.2d 29 (Tex.Crim.App. 1984) that providing such a strategic tool was "the very intent behind the passage of the statute." However, the case actually said that the legislative intent would be thwarted if a trial court's *sua sponte* shuffle foreclosed the State or a defendant from effecting one. *Id.* at 30. There are no specific procedures in place to ensure the randomness of a trial court's *sua sponte* shuffle, and so such a shuffle, while not prohibited, could raise a concern about tampering with the process.

1. See *Jones v. State*, 982 S.W.2d 386, 399 (Tex.Crim.App.1998)(Baird, J., dissenting)(the Court of Criminal Appeals may not interpret the harmless error rule in a way that exceeds the Court's rule making authority), *cert. denied*, 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999).

2. Article 35.11 provides:

The trial judge, on the demand of the defendant or his attorney, or of the State's counsel, shall cause a sufficient number of jurors from which a jury may be selected to try the case to be randomly selected from the members of the general panel drawn or assigned as jurors in the case. The clerk shall randomly select the jurors by a computer or other process of random selection and shall write or print the names, in the order selected, on the jury list from which a jury is to be selected to try the case. The

legitimate request without explanation. The case later went to trial, and the jury found appellant guilty on all counts.

On direct appeal, appellant argued that the trial court erred in denying his request for a jury shuffle. The State, in response, conceded the trial court's obvious error but argued the error was harmless under Texas Rule of Appellate Procedure 44.2(b).[3] The Second Court of Appeals reversed appellant's conviction, holding that it could not disregard the trial court's error as harmless under Rule 44.2(b). *Ford v. State*, 977 S.W.2d 824, 829 (Tex.App.-Fort Worth 1998). We granted the State's petitions for discretionary review to determine whether the court of appeals erred.[4] See Tex.R.App. Proc. 66.3(b).

The State argues now that (1) "[t]he right [to a jury shuffle] conveyed to [the] parties via Article 35.11 is outdated" because, "in light of our current jury formation statutes and modern mechanisms for drawing jury pools, the purpose of a jury shuffle—randomness—is normally accomplished even before the venire is seated in the courtroom;" and (2) "[a] substantial right of the appellant [was not] affected by the trial court's [error], because the record does not reflect that the original jury panel was not randomly summoned." The State concedes, however, that (3) "a jury shuffle is ... a strategic tool available to a prosecutor or defendant who believes a random shuffle of the assigned venire might result in a more favorable positioning of the members of the general panel, such that peremptory strikes or challenges for cause might then be used to obtain more favorable jurors;" (4) "the composition of the jury panel [in this case], and ultimately of the actual jury itself, would have in great probability been different had the shuffle been made;" and (5) "it is impossible to determine what would have been the composition of the jury panel had the shuffle been made and whether a jury selected from that particular panel would have been more or less likely to convict."

## II

The Legislature gave this Court authority to promulgate rules of appellate procedure *provided* those rules do "not abridge, enlarge, or modify the substantive rights of a litigant." See Tex. Gov't Code § 22.108. In this context, the Legislature must have intended the word "substantive" to mean "having major or practical importance." See *Webster's Ninth New Collegiate Dictionary* 1176 (1988). Acting pursuant to that *limited* grant of authority, we promulgated Rule 44.2(b), which provides that an appellate court need not reverse a trial court judgment for non-constitutional error if the appellate court determines that the error did not affect the defendant's "substantial rights." See footnote three, *supra*. Unfortunately, our precedents interpreting Rule 44.2(b) have been inconsis-

clerk shall deliver a copy of the list to the State's counsel and to the defendant or his attorney.

3. Rule 44.2 provides in relevant part:
(a) *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) *Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

4. We granted the petitions of both the State Prosecuting Attorney and the Tarrant County Criminal District Attorney (together, "the State"). Since the petitions were filed before our decision in *Ex parte Taylor*, 36 S.W.3d 883 (Tex.Crim.App.2001), the Court considers them both. See *Thomas v. State*, 65 S.W.3d 38, 39 n. 1 (Tex.Crim.App.2001)

tent. See M. McAdoo, *The State Can Rest: Texas Rule of Appellate Procedure 44.2(b) and "Harmless" Error,* 7 Tex. Wesleyan L.Rev. 183, 193 (2001)(Court of Criminal Appeals "has given unclear guidance" on the meaning of Tex.R.App. Proc. 44.2(b)). For example, in *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997), our first case addressing the meaning of the rule, we stated that a non-constitutional error requires reversal on appeal if the error "had a substantial and injurious effect or influence in determining the jury's verdict." The following year, in *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim. App.1998), we interpreted the rule differently, explaining that a non-constitutional error does *not* require reversal "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." Then, in *Jones v. State,* 982 S.W.2d 386, we changed course entirely and implied that a non-constitutional error requires reversal on appeal only if the error literally affected a "substantial" right of the defendant, but we failed to explain how a court determines whether a right is "substantial." Most recently, in *Schutz v. State,* 63 S.W.3d 442, 444 (Tex. Crim.App.2001), we again stated categorically that an appellate court need "not overturn a criminal conviction for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." But it is far from clear that an impact-on-the-outcome standard is appropriate for all errors that occur in the trial court.[5]

In their treatise on criminal procedure, Professors LaFave, Israel, and King have written:

American appellate courts initially applied harmless error legislation differently to different types of rights. In judging the impact of an error on a matter such as jury selection, courts focused on whether the error had resulted in a "miscarriage of justice," that is, whether the error was technical in nature or deprived the defendant of the substance of what that right was designed to provide. However, where the error related to the admission or evaluation of evidence, the reviewing court asked not whether the defendant had been denied the basic benefit of the evidentiary rule, but whether the error had produced a miscarriage of justice as measured by its likely impact upon the outcome of the proceeding. For example, if a trial judge erroneously admitted hearsay, the issue was not simply whether the particular violation of the hearsay rule was "technical" (e.g., where the court admitted a single hearsay statement that would have fit within a hearsay exception but for some minor detail); even if a substantial quantity of patently inadmissible hearsay evidence had been introduced, the court still had to decide whether that evidence had a sufficient bearing upon the total evidentiary picture to require a reversal.

Building upon these earlier distinctions in review based on the type of right violated, some American courts reviewing nonconstitutional errors today continue to use two modes of analysis when applying harmless error statutes. For rights that might loosely be described as concerned with the structure of the proceeding, courts have looked to whether the error was merely a technical violation or took from the defendant the substantive protection of the right.

**5.** For example, should the effect of an erroneous denial of an exception to an indictment be determined by examining the error's effect (if any) on the verdict?

A violation of the substance of such a right automatically requires a new trial, so that the strength of the evidence supporting the conviction is irrelevant. Examples of this automatic-reversal analysis include decisions reviewing errors in jury selection and changes of venue.

A second analysis, which considers the likely impact of the error on case outcome, is applied to trial errors that determine what evidence is presented to the jury, such as rulings on admissibility and joinder. It also is applied to erroneous pretrial rulings that have an impact upon the presentation of evidence, such as rulings on discovery, and to actions of the judge and prosecutor that may have influenced the jury in its evaluation of the evidence, such as erroneous jury instructions or trial misconduct by the prosecutor. Finally, this impact-on-outcome analysis is applied to violations of rules regulating plea bargaining and plea taking, and to errors in sentencing.

W. LaFave, J. Israel & N. King, *Criminal Procedure* § 27.6(b) at 934–936 (2d ed.1999)(footnotes omitted).

The general approach to harmless error analysis described above is sound, and I would adopt it for use under Rule 44.2(b). I would therefore hold that Rule 44.2(b) contemplates the following: An error involving a substantive right (*i.e.*, a right that has major or practical importance to criminal defendants generally) that "might loosely be described as concerned with the structure of the proceeding" should require reversal on appeal unless the appellate court has fair assurance that the error did not deprive the defendant of the substance of that right. An error involving a substantive right that is not "concerned with the structure of the proceeding" should require reversal on appeal unless the appellate court has fair assurance that the error did not affect the outcome of the proceeding in which the error occurred. An error involving a non-substantive right would rarely require reversal on appeal.

I am confident, for several reasons, that this new interpretation of Rule 44.2(b) is the appropriate one. First, and most importantly, this interpretation of Rule 44.2(b) is consistent with the *limited* grant of rule-making authority given to us by the Legislature. That is, this interpretation would ensure that the judicially-created harmless error rule will not be used to abridge legislatively granted substantive rights. Second, this interpretation of Rule 44.2(b) is generally consistent with what we have actually been doing, if not saying, in our precedents. See, *e.g., Schutz v. State*, 63 S.W.3d at 446 (trial court's erroneous admission of evidence did not require reversal because appellate court had fair assurance that error did not significantly affect jury); *Johnson v. State*, 43 S.W.3d 1, 7 fn. 9 (Tex.Crim.App.2001)(trial court's erroneous denial of defendant's challenges for cause required reversal because error deprived him of substantive protection of Texas Code of Criminal Procedure article 35.16 and forced him to accept two jurors who he would not have had to accept but for the error); *Llamas v. State*, 12 S.W.3d 469, 471–472 (Tex.Crim.App.2000)(trial court's erroneous denial of defendant's pretrial motion to sever indictments required reversal because appellate court did not have fair assurance error did not have a substantial and injurious effect on the jury's verdict); *Ladd v. State*, 3 S.W.3d 547, 566 (Tex.Crim.App.1999)(trial court's error in exempting two witnesses from sequestration rule did not require reversal because appellate court had fair assurance that error did not materially affect witnesses' testimony), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000); *Mos-*

*ley v. State*, 983 S.W.2d 249, 258–260 (Tex.Crim.App.1998)(improper prosecutorial argument did not require reversal because appellate court was confident argument did not affect jury), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). Third, this interpretation would bring some measure of clarity and consistency to a difficult area of the law and would provide much-needed guidance to the appellate courts of this state. Finally, this interpretation of Rule 44.2(b) would strike the appropriate balance, permitting an appellate court to disregard errors that probably did not prejudice the defendant while encouraging trial courts to carefully follow the law.

### III

The trial court's error in this case involved the statutory right to a jury shuffle, which right, pertaining as it did to jury selection, concerned the structure of appellant's trial. But does the right to a jury shuffle have major or practical importance to criminal defendants generally, and did the error here deprive appellant of the substance of that right?

Article 35.11 provides an accused with an absolute right, after viewing the seating of the members of the jury panel in the courtroom, to have the names of the members of the jury panel shuffled and the panel reseated in a new and random order. *Davis v. State*, 782 S.W.2d 211, 214 (Tex. Crim.App.1989); *Williams v. State*, 719

S.W.2d 573, 574–575 (Tex.Crim.App.1986). That is to say, by way of Article 35.11, the Legislature has provided an accused with a strategic tool with which he can reconfigure the jury panel in the hope of either (1) placing visually preferred venire members earlier in the seating arrangement so as to increase the probability they will be selected or (2) placing visually non-preferred venire members later in the seating arrangement so as to decrease the probability they will be selected.[6] Accord, D. Bobbitt, *The Texas Jury Shuffle*, 57 Tex. B.J. 596, 598 (June 1994)(litigants use jury shuffle to reconfigure seating positions of jury panel to enhance opportunity to select or not select members of particular groups). Since "the makeup of the jury affects its decision," *Johnson v. State*, 43 S.W.3d at 5, the right to a jury shuffle certainly has practical importance to criminal defendants generally.

It is also without question that the error here deprived appellant of the substance of his right to a jury shuffle. He was, after all, denied the requested shuffle. It is not enough to claim, as the State does, that the jury selection statutes[7] already ensured that the trial panel was "random." Article 35.11 guarantees the right to a jury shuffle even if the venire has already by "randomized" in some fashion. *Jones v. State*, 833 S.W.2d 146, 149 n. 5 (Tex.Crim.App.1992); *Wilkerson v. State*, 681 S.W.2d 29, 30 (Tex. Crim.App.1984); accord, G. Dix, & R.

---

**6.** We have previously recognized that Article 35.11, by its very design, provides such a strategic tool to litigants. See *Yanez v. State*, 677 S.W.2d 62, 64–65 (Tex.Crim.App.1984)(it was "reasonable" for appellant, who was apparently Mexican–American, to request jury shuffle in the hope of increasing the probability that Mexican–Americans would be selected to sit on his jury). We have also previously recognized that providing such a strategic tool was "the very intent behind the passage of the statute." *Wilkerson v. State*, 681

S.W.2d 29, 30 (Tex.Crim.App.1984). If the prosecutors of this state believe the statute is "obsolete," they should express that view to the Legislature, not the Judiciary.

**7.** See, *e.g.*, Tex. Gov't Code § 62.001 (general venire must be drawn from the names of all persons currently registered to vote in the county and all citizens of the county currently holding a valid driver's license or personal identification card).

Dawson, *Texas Criminal Practice and Procedure* § 35.18 n. 7 (2d ed. 2001) (Article 35.11 guarantees the right to a jury shuffle regardless of the "randomization" of the general venire ensured by Tex. Gov't Code § 62.001).

It is true, as the State notes, that we stated once that Article 35.11 was "designed to ensure randomness in juror selection—not to accord a defendant with a particularized right to personally cause the panel to be shuffled." *Jones v. State*, 833 S.W.2d at 148 n. 3. But that comment in *Jones* must be understood in context. In that case, we had to determine "whether a defendant has the right to shuffle the jury after the State's request for a shuffle has been granted when, prior to the State's request, the defendant declined to shuffle the jury, after first being given an opportunity to view the panel seated in order and confer with his attorney." *Id.* at 147. We answered that question in the negative, because the plain language of Article 35.11 allows counsel for *either* the State *or* the defendant, but not both, to request a shuffle. Thus, in context, our comment meant no more than that Article 35.11 allows one litigant, but not both, to "randomize" the trial panel.[8]

In summary, we cannot say with fair assurance that the trial court's error did not deprive appellant of the substance of his legislatively granted right to a jury shuffle. Thus, we should not hold the error harmless under Rule 44.2(b). I would affirm the judgment of the court of appeals.

---

**8.** In any event, when we attempt to discern the legislative "intent" or "purpose" behind a statute,

> we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment.... We focus on the literal text ... because the text is the only *definitive* evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law. There really is no other certain method for determining the collective legislative intent or purpose at

some point in the past, even assuming a single intent or purpose was dominant at the time of enactment.

*Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991) (emphasis in original). Read literally, Article 35.11 unambiguously provides an accused with a strategic tool with which he can reconfigure the jury panel assigned to his case in the hope of obtaining a more sympathetic jury. We can only assume, therefore, that it was the actual legislative intent or purpose to provide an accused with just such a strategic tool.