Opinion issued June 3, 2004








   



In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00289-CR




ERNESTO JAVIER ALVARADO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 751516 




MEMORANDUM OPINION
          A jury found appellant, Ernesto Javier Alvarado, guilty of murder and assessed
punishment at 46 years in prison and a $10,000 fine. In two issues, appellant
contends that the trial court erred in admitting hearsay testimony and in admitting
evidence of appellant’s illegal alien status.
          We affirm. 
Background
          In April 1997, Alfredo Hernandez lived with Guillermo Nava in Nava’s trailer
home. Before moving in with Nava, Hernandez had lived with appellant in
appellant’s nearby trailer. On April 24, 1997, Nava and Hernandez were at Nava’s
trailer drinking beer and smoking crack cocaine. They were eventually joined by
Nancy Ramirez. 
          Nava and Ramirez were sitting on the couch and Hernandez was in the kitchen
when appellant walked into Nava’s trailer. Appellant proceeded to the kitchen and
began arguing with Hernandez. Appellant pulled out a gun and he and Hernandez
began struggling over the weapon. During the struggle, Hernandez tripped and fell. 
Hernandez was then shot by appellant as he attempted to get up. Hernandez stumbled
around the trailer and was shot again by appellant. At trial, the medical examiner
testified that both gunshots inflicted fatal wounds. Following the shooting, appellant
left Nava’s trailer and drove away. 
          In a photo lineup in the days following the shooting, and again at trial, Nava
and Ramirez each identified appellant as the person who had shot Hernandez. A gun
holster was recovered from the scene that matched a holster that Ramirez had seen
appellant wearing when he entered Nava’s trailer. Evidence was presented at trial
that Hernandez was shot with either a .44 caliber Smith & Wesson or Taurus
magnum. Testimony was presented that a few months preceding the shooting,
appellant was in possession of such a gun.
Hearsay Testimony
          In his first issue, appellant contends that the trial court erred in admitting
hearsay testimony from Ramirez during the State’s case-in-chief. 
          Hearsay is defined as a statement, other than one made by the declarant while
testifying at the trial, offered in evidence to prove the truth of the matter asserted. 
Tex. R. Evid. 801(d). The admissibility of hearsay evidence is a question for the trial
court, reviewable under an abuse of discretion standard. See Coffin v. State, 885
S.W.2d 140, 149 (Tex. Crim. App. 1994).
          The testimony of which appellant complains is contained in the following
exchange:
[Prosecutor:] But did you recognize his voice?
[Ramirez:] I recognized his voice, yes.
Q. And who all was arguing?
A. [Appellant] and Alfred [Hernandez].
Q. Do you recall what they were saying?
A. No.
Q. Do you recall what they were arguing about?
A. No, but I assumed what it was about.
Q. Is that what you had heard out on the street?
A. That’s what I had heard previously.
Q. What was it?
[Defense counsel:] Your Honor, I am going to object to speculation if
she doesn’t know for a fact.
The Court: I will let her answer it.
[Defense counsel:] It would hearsay also what she heard on the street
[sic].
 
The Court: Overruled. You may proceed. Answer it if you can.
[Prosecutor]: You can answer it.
A. I can answer as to what I thought the argument was about?
Q. Yes.
A. A transmission.
Q. And is that for a car?
A. I thought it was for a car.
Q. And was the defendant mad at Alfred [Hernandez] because of it?
A. Yes. 
Q. Do you recall anything that they were saying in the kitchen?
A. No, no exact words.
          In his appellate brief, appellant complains, “Ramirez was allowed to testify that
she had heard ‘out on the street’ that appellant was mad at [Hernandez] over an auto
transmission.” Even assuming that Ramirez’s testimony was inadmissible hearsay,
the record does not show that appellant was harmed by the admission of such
testimony. 
          The admission of a statement that is hearsay is non-constitutional error subject
to a harm analysis under Rule of Appellate Procedure 44.2(b). Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998). Non-constitutional error “must be
disregarded” unless it affected the defendant’s “substantial rights.” Tex. R. App. P.
44.2(b). A defendant’s substantial rights are affected “when the error had a
substantial and injurious effect or influence in determining the jury’s verdict.” King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a
slight influence on the verdict, the error is harmless. See Johnson, 967 S.W.2d at
417. 
          Appellant contends that the testimony was highly prejudicial because it was the
only evidence presented indicating that appellant had a motive to kill Hernandez. 
However, as pointed out by the State during both voir dire and closing argument,
motive is not an essential element to sustain a murder conviction. Garcia v. State,
495 S.W.2d 257, 259 (Tex. Crim. App. 1973); see also Tex. Penal Code Ann.
§ 19.02 (Vernon 2003). 
          It is also of particular relevance that properly admitted evidence of guilt is a
factor to be considered when performing a harm analysis under rule 44.2(b). Motilla
v. State, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002). Another relevant factor is “the
character of the alleged error and how it might be considered in connection with other
evidence in the case.” Id. at 359 (quoting Morales v. State, 32 S.W.3d 862, 867 (Tex.
Crim. App. 2000)). 
          Here, the impact of Ramirez’s testimony that appellant was angry with
Hernandez regarding a transmission was relatively insignificant when considered in
connection with the other evidence supporting appellant’s guilt. Ramirez’s
complained-of testimony was admitted only after the jury had already heard the
testimony of Nava identifying appellant as the person he saw shoot Hernandez. 
Ramirez also testified that she witnessed appellant shoot Hernandez. Both Ramirez
and Nava testified that they knew appellant before the night of the offense. Ramirez
and Nava each testified that they heard appellant and Hernandez arguing before the
shooting. Nava stated that he saw appellant and Hernandez struggling. Evidence was
also introduced that, when he entered Nava’s trailer, appellant was wearing a gun
holster that was similar to the one recovered at the murder scene. Other evidence was
presented that appellant owned a gun similar to the one used to kill Hernandez. 
Lastly, we note that the disputed testimony was not long in duration and was not
emphasized by the State during closing argument. 
          Having reviewed the record as a whole, we cannot say that allowing Ramirez
to give the complained-of testimony had a substantial and injurious effect on the
jury’s verdict. Thus, any error in admitting the testimony was harmless.
          We overrule appellant’s first point of error.
Lack of Notice for Extraneous Offense Admitted at Punishment
          In his second point of error, appellant contends that the trial court erred in
allowing the State to question appellant during punishment about his illegal-alien
status because the State had not given notice under Code of Criminal Procedure
article 37.07, section 3(g). 
          After a timely request by the defendant, the State must provide “reasonable
notice . . . in advance of trial” of its intent to introduce extraneous-conduct evidence.
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp. 2004); Tex. R. Evid.
404(b). The trial court has broad discretion to admit or exclude extraneous-offense
evidence. See Brooks v. State, 76 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.]
2002, no pet.) (applying this standard to admission of extraneous-offense evidence
over objection based on article 37.07, section 3(g)’s notice requirements). 
          At the punishment phase of the trial in this case, the prosecutor was allowed
to ask, over appellant’s objection, if appellant entered the United States illegally. The
prosecutor asked the question several times because appellant’s answers were
contradictory. Appellant initially denied that he was an illegal alien, but then
admitted that he was not in the United States legally. 
          Appellant acknowledges that his illegal-alien status constituted a penal offense,
which was admissible at the punishment phase of trial under Code of Criminal
Procedure article 37.07, section 3(a). See Infante v. State, 25 S.W.3d 725, 726-27
(Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). However, appellant complains
that, despite his article 37.07, section 3(g) request, the State did not notify him that
it intended to introduce evidence of his illegal-alien status. It is undisputed that the
State failed to provide notice of its intent to introduce evidence of appellant’s
immigration status even though appellant had requested notice as required by article
37.07, section 3(g).
          Regardless of whether the admission of appellant’s testimony regarding his
illegal alien-status was error, we hold such error was harmless.
          Error in admitting evidence with insufficient notice under article 37.07, section
3(g) is non-constitutional error. Apolinar v. State, 106 S.W.3d 407, 414 (Tex.
App.—Houston [1st Dist.] 2003, pet. granted) (citing Roethel v. State, 80 S.W.3d 276,
281 (Tex. App.—Austin 2002, no pet.) (concluding that error in admitting
extraneous-offense evidence over objection based on article 37.07, section 3(g)’s
notice requirement is subject to rule-44.2(b) harmless-error analysis)). We must
disregard any such error that does not affect a substantial right. Tex. R. App. P.
44.2(b). As discussed in the preceding section of this opinion, an error affects a
defendant’s substantial rights when the error had a substantial and injurious effect or
influence on the jury’s verdict. King, 953 S.W.2d at 271. 
          Harm from a violation of the notice provision of article 37.07, section 3(g) is
assessed against the statute’s intended purpose. See Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(g); Ford v. State, 73 S.W.3d 923, 925-26 (Tex. Crim. App. 2002);
Roethel v. State, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.). The lack
of notice does not render the evidence inherently unreliable, but instead raises a
question about the effect of procedural noncompliance. Roethel, 80 S.W.3d at 282. 
The purpose of article 37.07, section 3(g) is to avoid unfair surprise and to enable the
defendant to prepare to answer the extraneous offense evidence. Nance v. State, 946
S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref’d). 
          In addressing the potential harm suffered by the defendant due to lack of
notice, the appellate court analyzes how the deficient notice affected the defendant’s
ability to prepare for the evidence. Roethel, 80 S.W.3d at 282. This analysis involves
an examination of the record to determine whether the deficient notice resulted from
prosecutorial bad faith or prevented the defendant from preparing for trial. Id. In
determining whether the defendant was unable to prepare for trial, the appellate court
looks to whether the defendant was surprised by the substance of the testimony and
whether that affected his ability to prepare cross-examination or mitigating evidence. 
Id.
          Appellant complains that the lack of notice prevented him from questioning the
venire panel related to issues of bias against illegal aliens and from preparing the jury
for the possibility that appellant may be in this country illegally. Appellant further
complains that the lack of notice resulted in appellant giving confused testimony,
which damaged his credibility. When the prosecutor asked appellant whether he was
in the United States legally, appellant initially responded affirmatively, but then, on
further questioning stated that he was not here legally. Appellant argues that, had he
been on notice that the State would question him on this issue, his counsel could have
prepared him for such questioning. Appellant points out that during closing argument
in the punishment phase, the prosecutor reminded the jury that appellant had initially
not told the truth regarding his illegal alien status.
          Our review of the record finds no indication of bad faith in the State’s failure
to provide notice of the extraneous offense. To the contrary, at some point during
trial, the State apparently informed the defense of its intent to ask appellant during the
punishment phase whether he was in this country legally. The record contains a
transcript of a hearing held after the jury retired to deliberate guilt-innocence at which
defense counsel objected to the State asking appellant about his immigration status. 
The prosecutor stated that she had not given appellant the required article 37.07
notice because she was unaware whether appellant was or was not an illegal alien and
would not know until she questioned him. Although the State did not meet the
requirements of article 37.07, section 3(g), there is no indication from the record that
the omission was intended to mislead appellant and prevent him from preparing a
defense. 
          The record also shows that appellant was not surprised by the State’s inquiry
into his immigration status. During the guilt-innocence phase, appellant testified on
direct examination that he was living in El Salvador, which he referred to as “his
country,” when Hernandez was killed in April 1997. Appellant further stated that he
remained in El Salvador until he returned to the United States in May 2002. At that
time, appellant testified, “Immigration grabbed me in Arizona, about half an hour
from the border.” At that point, defense counsel should have reasonably anticipated
that the State would inquire into appellant’s immigration status. Moreover, from that
testimony alone, the jury could have surmised that appellant was in the United States
illegally. Lastly, as mentioned above, the State apparently notified the defense that
it intended to question appellant about his immigration status at some point before the
punishment phase as indicated by the hearing held while the jury deliberated guilt-innocence.
          Appellant also argues that harm is demonstrated by the fact that the jury
assessed punishment at 46 years in prison despite the State’s request that appellant
be sentenced to 40 years. However, the evidence presented by the State, particularly
the eye-witness testimony of Nava and Ramirez and the forensic testimony of the
medical examiner, showed that the offense in this case was a particularly violent and
cold-blooded one. Even with that evidence before it, the jury assessed punishment
at 46 years in prison, far less than the maximum prison time of 99 years or life. See
Tex. Penal Code Ann. § 12.32 (Vernon 2003) (establishing punishment range of
five to 99 years or life, plus maximum fine of $10,000).
          Under the facts of this case and the applicable law, we conclude that the
admission of the complained-of extraneous offense, if error, did not have a substantial
and injurious effect or influence on the verdict. See King, 953 S.W.2d at 271.
          We overrule appellant’s second point of error.
 

Conclusion
          We affirm the judgment of the trial court.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).