IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00002-CR

 

Ismael DeLeon Luna,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 249th District
Court

Johnson County, Texas

Trial Court No. F41918

 



Opinion



 

Appellant Ismael DeLeon Luna appeals his
conviction for two counts of felony delivery of a controlled substance (greater
than one gram but less than four grams) in a drug free zone and one count of felony
possession of a controlled substance (over 400 grams) in a drug free zone.  A
jury assessed ten-year and twenty-year prison sentences, respectively, for the
first two counts and a thirty-year prison sentence and $15,000 fine for the
third count.  We will affirm.

            In his first issue, Luna
contends that the trial court erred by denying his motion to suppress and
admitting his videotaped statement into evidence.  Luna argues that the
statement was obtained when police continued to question him after he had
asserted his Fifth Amendment right to remain silent.

            The right to terminate
questioning is among the procedural safeguards that Miranda
establishes.  Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602,
1627-28, 16 L.Ed.2d 694 (1966).  This right, which safeguards the Fifth
Amendment right to remain silent, requires the police to immediately cease custodial
interrogation when a suspect “indicates in any manner, at any time prior to or
during questioning, that he wishes to remain silent.”  Ramos v. State,
245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (quoting Miranda, 384 U.S. at 473-74, 86 S.Ct. at 1627).  The suspect does not need to use any particular word or
phrase to invoke the right to remain silent.  Watson v. State, 762
S.W.2d 591, 597 (Tex. Crim. App. 1988).  Any declaration of a desire to
terminate the contact or inquiry should suffice.  Ramos, 245 S.W.3d at
418.  The suspect need not object to further questioning in order to protect
the right to remain silent.  Watson, 762 S.W.2d at 599.

            The threshold question is
whether the suspect invoked his right to silence.  Ramirez v. State, 44
S.W.3d 107, 110 (Tex. App.—Austin 2001, no pet.).  An interrogating officer
need not stop his questioning unless the suspect’s invocation of rights is
unambiguous.  Ramos, 245 S.W.3d at 418; Dowthitt v. State, 931
S.W.2d 244, 257 (Tex. Crim. App. 1996).  Ambiguity exists when the suspect’s
statement is subject to more than one reasonable interpretation under the
circumstances.  Williams v. State, 257 S.W.3d 426, 433 (Tex. App.—Austin 2008, pet. ref’d).  The officer is not required to clarify ambiguous
remarks; however, an officer does not violate a suspect’s right to remain
silent when he attempts to clarify whether the suspect wishes to remain silent,
and the suspect thereafter chooses to continue to speak about the offense.  Ramos,
245 S.W.3d at 418; Williams, 257 S.W.3d at 432-33.  In determining
whether the right to remain silent was unambiguously invoked, courts look to
the totality of the circumstances.  Watson, 762 S.W.2d at 597.

            Following Luna’s arrest,
Officer Mark Goetz of the Cleburne Police Department met with him.  Luna
indicated that he was having trouble understanding Goetz, so Goetz asked Maria
Herrada, who is fluent in both Spanish and English, to translate.  The
transcript of a portion of the conversation follows:

MR. GOETZ:  Tell him that he is, in fact,
under arrest and before that we have to read him his rights.

 

(Herrada interpreting)

 

MR. GOETZ:  Would you be kind enough to
read those to him and ask him if he understands each of those rights.

 

(Herrada-Luna converse in Spanish)

 

MS. HERRADA:  Okay.  He’s talking about
-- when I said if he’s going to, you know, stay, if he’s going to be silent or
if he’s going to speak to you in the last one, and he said, Talk about what?  I
said, Well, I need for you to stay yes or no.  And he said, All right.  And
then say -- and then he wants to know what do you want to talk to him about.

 

MR. GOETZ:  I want to talk to him about
drugs.  I want to talk to you about the drugs that were over at your house and
what’s going on over there.

 

MR. LUNA:  I just -- (unintelligible)

 

MR. GOETZ:  Let me make sure we’re all
on the same page here.  Do you understand the rights she said to you?

 

MR. LUNA:  Yeah.

 

MR. GOETZ:  All right.  Are you willing
to talk to me about what’s going on over there at your house?

 

(Herrada interpreting)

 

Both parties agree that Luna shook his
head from side to side and replied, “No puedo,” which both parties agree is
properly translated as “I can’t.”  Goetz then stated, “Tell him we’re not
asking him about who he’s getting his dope from right now.  I want to know what’s
going on at his house.”  The interpreter translated that for Luna, who then
made several incriminating statements.

            Luna argues that when he
said, “No peudo” (i.e., “I can’t”), he unambiguously invoked his right
to remain silent, but we agree with the State’s contention that Luna’s response
was ambiguous.

Goetz interpreted Luna’s response not as
an unambiguous invocation of his right to remain silent but only as an inability
to discuss the source of the drugs found at the house.  This is a plausible
interpretation of the statement under the circumstances.  When Herrada first read
Luna his Miranda rights, Luna expressed a willingness to talk to Goetz
and asked what Goetz wanted to talk to him about.  When Goetz then asked Luna
if he was willing to talk to him about what was going on at his house, Luna did
not say, “No.”  Instead, he responded, “No peudo” (i.e., “I can’t”).  A
plain interpretation of this response indicates that Luna was not necessarily expressing
a desire to remain silent but rather an inability to talk to Goetz for some
reason.  The response was thus ambiguous, and Goetz’s continued questioning was
not violative of Luna’s right to remain silent.  See, e.g., United
States v. Sanchez, 866 F. Supp. 1542, 1559 (D. Kan. 1994) (holding
statement “I can’t say nothing” was ambiguous and thus not violative of
defendant’s right to remain silent); People v. Montano, 226 Cal. App. 3d 914, 931, 277 Cal. Rptr. 327, 334 (1991) (stating defendant’s response “I
can’t” when asked “Can you tell us what happened?” did not amount to an
invocation of his right to remain silent).  We overrule Luna’s first issue. 

            In his second issue, Luna contends that
the trial court erred during the punishment phase of the trial in admitting evidence
about certain extraneous bad acts because the State failed to provide proper
notice under article 37.07, section 3(g) of the Code of Criminal Procedure. 
The State responds that Luna failed to preserve this issue for appellate review;
the State substantially complied with the notice provision of article 37.07,
section 3(g); and even if the trial court erred in admitting the testimony, the
error was harmless.  Assuming without deciding that this issue is preserved for
appellate review and that the trial court erred in admitting the testimony, we
agree with the State that the error was harmless.

            Error in admitting evidence
with insufficient notice under article 37.07, section 3(g) is nonconstitutional
error.  Apolinar v. State, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2003), aff’d on other grounds, 155 S.W.3d 184 (Tex. Crim. App.
2005); Roethel v. State, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no
pet.).  A nonconstitutional harm analysis for statutory violations is performed
under Texas Rule of Appellate Procedure 44.2(b).  See Tex. R. App. P. 44.2(b); Gray v.
State, 159 S.W.3d 95, 97-98 (Tex. Crim. App. 2005).  To assess
nonconstitutional errors, we examine whether the purpose of the statute or rule
violated was thwarted by the error.  Roethel, 80 S.W.3d at 281 (citing Ford
v. State, 73 S.W.3d 923, 925-26 (Tex. Crim. App. 2002)).  The purpose of
article 37.07, section 3(g) is to avoid unfair surprise and to enable a
defendant to prepare to answer the extraneous offense evidence.  Apolinar,
106 S.W.3d at 414-15; Roethel, 80 S.W.3d at 282; Nance v. State,
946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref’d).  This analysis
requires examining the record to determine whether the deficient notice
resulted from prosecutorial bad faith or prevented the defendant from preparing
for trial.  Roethel, 80 S.W.3d at 282.  In determining the latter,
appellate courts look at whether the defendant was surprised by the substance
of the testimony and whether that affected his ability to prepare
cross-examination or mitigating evidence.  Id.

Luna does not argue that the admission
of the complained-of evidence was the result of prosecutorial bad faith, nor
does he argue unfair surprise.  The record reflects that at least two weeks
prior to trial, the State amended its notice of intent to introduce evidence of
extraneous matters to include the following:  “On or about multiple times and
on multiple dates in Johnson County, Texas beginning when the defendant Ismael
Luna’s son was approximately two years old, the defendant Ismael Luna sold
illegal drugs.”  This same paragraph also appeared in the State’s second,
third, and fourth amended notices.  During the punishment phase of the trial,
Luna’s former wife testified that Luna sold cocaine for about a six-month
period beginning in 1997 when her son was two years old, and, thereafter, he
stopped selling drugs until the beginning of 2005.  We conclude that Luna did
not suffer harm because he claims no surprise as to the testimony and he does
not claim his ability to prepare cross-examination or mitigating evidence was
affected.  See Roethel, 80 S.W.3d at 282.  We overrule Luna’s second
issue.

Having overruled both of Luna’s issues,
we affirm the trial court’s judgment.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed August 26, 2009

Publish

[CRPM]