Affirmed and Opinion filed June 29, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00192-CR



 

Christopher Connley Davis, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 1170856



 

  OPINION

 

A jury found appellant Christopher Connley Davis guilty
of aggravated robbery and assessed his punishment at ten years’ confinement.  Appellant
appeals from this first degree felony conviction, and we affirm.

Background

            Around 11:30 p.m.
on April 20, 2008, complainant Jonathan Diaz went to a nearby store to purchase
diapers for his daughter.  When he returned to his apartment complex, the
complainant felt uneasy when he noticed a man sitting in the bushes.  Complainant
observed the man in his rear view mirror getting out of the bushes and then
walking past the passenger side of complainant’s vehicle.  As the complainant
exited his car, the man stopped walking, turned around, reached under his
shirt, pulled out a gun, and pointed it at the complainant.  The complainant
heard the gunman cock his gun and state, “You know what this is.  Give me what
you got.”  The complainant gave the gunman his money clip, cell phone, and
keys.  The gunman asked the complainant for cash, but the complainant told the
gunman that he did not have any cash.

            Appellant, also
holding a gun in his hand, ran up to the gunman and asked him if he had
retrieved any cash from the complainant.  When the gunman told appellant that
the complainant did not have any cash, appellant stated, “I feel deceived.  . .
. I am going to shoot him.”  Appellant noticed that the complainant was staring
at him from this close distance, so appellant covered his face with his t-shirt
and told the complainant to stop looking at him.  Appellant kept telling the
other gunman that he would shoot the complainant and that he did not care.  

The gunman tried to convince appellant not to shoot
the complainant.  The gunman looked at the diaper box the complainant had
purchased and told appellant, “[N]o, no let’s not do it.  There’s no cash on
him.  He don’t have anything.  Let’s just go.  He is [sic] probably got a kid.” 
The complainant looked at appellant — who was still pointing a gun at the
complainant — and offered to let appellant search him.  Appellant then searched
the complainant.  When appellant could not find any cash on the complainant, he
kept the complainant’s cell phone but threw away the complainant’s keys. 
Appellant instructed the complainant to look down on the ground and threatened
to shoot the complainant if he looked up.  Appellant and the gunman ran away. 
The complainant called the police.

The complainant later identified appellant as one of
the robbers on a photo spread; the complainant confirmed he was one hundred
percent sure appellant robbed him.  The complainant also identified appellant at
trial, testifying he had “no doubt at all” that appellant robbed him.  A jury
found appellant guilty of aggravated robbery and assessed his punishment at ten
years’ confinement.  Appellant timely appealed, raising six issues.

Analysis

I.                  
Voir Dire

In his first issue, appellant argues that the trial court
“erred in refusing a proper question on jury voir dire.”  The State contends
that the trial court properly refused the question because it was an improper
commitment question.

The trial court has broad discretion over the process
of selecting a jury.  Sells v. State, 121 S.W.3d 748, 755 (Tex. Crim.
App. 2003) (en banc).  We will not disturb the trial court’s ruling on the
propriety of a particular question during voir dire absent an abuse of discretion. 
Id.  

A voir dire question is proper if it is crafted to
uncover a prospective juror’s preexisting prejudice or bias on an issue
applicable to the case.  Sanchez v. State, 165 S.W.3d 707, 712 (Tex.
Crim. App. 2005) (en banc).  A commitment question is one that commits a
prospective juror to resolve or to refrain from resolving an issue a certain
way after learning of a particular fact.  Lydia v. State, 109 S.W.3d
495, 498 (Tex. Crim. App. 2003) (citing Standefer v. State, 59 S.W.3d
177, 179 (Tex. Crim. App. 2001)).  A voir dire question becomes an improper
commitment question when it is intended to create a bias or prejudice in a
venire member before the prospective juror has heard the evidence. Sanchez,
165 S.W.3d at 712.

To determine whether a question is an improper
commitment question, we consider whether the question (1) is a commitment
question; and (2) includes only those facts that lead to a valid challenge for
cause.  Standefer v. State, 59 S.W.3d 177, 179-82 (Tex. Crim. App. 2001). 
Accordingly, a commitment question is improper when (1) the law does not
require the commitment, such that a juror would not be disqualified for cause
by being influenced by a particular fact or by having a particular attitude or
opinion; or (2) it also includes facts in addition to those necessary to
establish a challenge for cause.  Sanchez, 165 S.W.3d at 712.

In this case, appellant’s trial counsel inquired,
“Let’s talk about factors in a section of the sentence in a case of aggravated
robbery with a deadly weapon, what factors do y’all think are important?”[1]
This question, although open-ended, is a commitment  question because it “asks
the prospective juror[s] to set hypothetical parameters” for their
decision-making.  See Standefer, 59 S.W.3d at 180 (question
asking “What circumstances in your opinion warrant the imposition of the death
penalty?” was a commitment question).

Trial counsel’s commitment question was improper because
the law does not require a commitment.  See Sells, 121 S.W.3d at 757-58;
Standefer, 59 S.W.3d at 181-82.  A “prospective juror is not challengeable
for cause simply because he does not consider a particular type of evidence to
be mitigating.”  Standefer, 59 S.W.3d at 181.  Whether a juror considers
a particular type of evidence to be mitigating is therefore not a proper
inquiry.  Id. at 181-82; see also Sells, 121 S.W.3d at
757-58.  Trial counsel’s question was an improper commitment question, and the
trial court acted within its discretion by refusing to allow trial counsel to
ask it.  See Sells, 121 S.W.3d at 757-58; Standefer, 59 S.W.3d
at 181.  

We overrule appellant’s first issue.

II.              
Admission of Evidence During Punishment Phase

In his second through sixth issues, appellant
contends the trial court erred by allowing the State to introduce evidence of
(1) another aggravated robbery; (2) appellant’s participation in the
spray-painting of graffiti depicting gang symbols; (3) appellant’s poor grades
in high school; (4) appellant’s school disciplinary records; and (5) appellant’s
jail disciplinary record.  We address each issue in turn. 

We review the admission of evidence of extraneous
misconduct or bad acts under an abuse of discretion standard.  Mitchell v.
State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (en banc); Brooks v.
State, 76 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

A.               
Aggravated Robbery

In his second issue, appellant contends that the trial
court “erred in admitting an extraneous robbery during the punishment phase”
because the complainant’s identification of appellant as the robber was too
tentative.  Appellant argues that the trial court erred in its initial
determination that a jury reasonably could find beyond a reasonable doubt that
appellant committed the extraneous offense against the complainant in that
robbery.

The admissibility of evidence at punishment is
largely guided by article 37.07 of the Texas Code of Criminal Procedure.  Haley
v. State, 173 S.W.3d 510, 513 (Tex. Crim. App. 2005).  Under section 3 of
article 37.07, the State may offer into evidence any matter the trial court
deems relevant to sentencing.  Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)
(Vernon 2009).  The State may introduce evidence of an extraneous offense
provided that it is proven beyond a reasonable doubt to have been committed by
the defendant or for which he could be held criminally responsible.  Id. 


Evidence is relevant to sentencing within the meaning
of the statute if the evidence is “helpful to the jury in determining the
appropriate sentence for a particular defendant in a particular case.”  Rodriguez
v. State, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006).  The trial court “is
deemed the authority on the threshold issue of admissibility of relevant evidence
during the punishment phase of a trial.”  Mitchell, 931 S.W.2d at 953. 
Unless the extraneous offense evidence is such that the jury can rationally
find the defendant criminally responsible for the extraneous offense, the trial
court is not permitted to admit it at a punishment hearing.  Smith v. State,
227 S.W.3d 753, 759-60 (Tex. Crim. App. 2007).  Whether an extraneous offense was
established beyond a reasonable doubt, however, is a question of fact for the
jury rather than a preliminary question of admissibility for the trial court.  Mitchell,
931 S.W.2d at 953.

Outside the jury’s presence, the State announced its
intention to call the extraneous-offense complainant Jose Vasquez as a witness
regarding another aggravated robbery appellant allegedly committed.  Appellant
objected to Vasquez testifying because he “cannot identify . . . [appellant] as
the one who robbed him.”  Appellant also stated, “[O]ur position is that until
the State can meet the threshold to convince you that they can prove this
extraneous beyond a reasonable doubt, then it shouldn’t come into the jury at
all.”  The State made the following oral proffer:

Judge, the State proffers that the defendant committed an
aggravated robbery against Jose Vasquez and that Jose Vasquez will say when
shown a photospread including the defendant’s picture picked out the defendant
and notated that he was pretty sure that that was the person that robbed him
with a gun.

*                                  *                                  *

After . . . [Jose Vasquez] picked the defendant out of that
photospread that officer additionally showed him about four or five other
photospreads including multiple potential suspects and he indicated to that
officer that no, it was the guy in the first photospread that I identified
meaning the defendant in this case.

Appellant again objected and stated,
“The jury cannot find rationally beyond a reasonable doubt that . . .
[appellant] is involved in that [robbery] based on tentative identification.” 
The trial court overruled appellant’s objection and stated, “As to the State’s
proffer of the evidence regarding Mr. Vasquez, the Vasquez robbery, the Court
finds that the — and in making it a threshold examination of the admissibility
of that evidence, the Court finds that the State has done so in its proffer.”

The State’s proffer shows that Vasquez would testify
before the jury that (1) an aggravated robbery was committed against him; (2)
he initially identified appellant, although not unequivocally, as the person
who committed the aggravated robbery against him using a gun; and (3) after
viewing four or five additional photo spreads of multiple potential suspects,
he positively identified appellant as the person who robbed him.  

Because a jury reasonably could credit Vasquez’s
testimony that an aggravated robbery was committed against him, and because he
positively identified appellant as the robber, the trial court did not abuse
its discretion by concluding that the testimony described in the State’s proffer
would enable a rational jury to find beyond a reasonable doubt that appellant
is criminally responsible for committing the extraneous offense.  See Bowden
v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (en banc) (a
complainant’s credible identification of the defendant constitutes legally
sufficient evidence to support a jury verdict); Walker v. State, 180
S.W.3d 829, 832–33 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (a jury could
rationally find that appellant committed aggravated robbery based on an
eyewitness’s positive identification of appellant as the one who committed the
robbery, even though complainant was unable to identify appellant as the
robber); Davis v. State, 177 S.W.3d 355, 358–59 (Tex. App.—Houston [1st
Dist.] 2005, no pet.) (en banc) (a jury could rationally find that appellant
committed aggravated robbery based only on the complainant’s positive
identification of appellant as the one who committed the offense); Johnson
v. State, 176 S.W.3d 74, 77 (Tex. App.—Houston [1st Dist.] 2004, pet.
ref’d) (a jury could rationally find that appellant committed aggravated
robbery based on the complainant’s positive identification of appellant and
testimony that appellant committed the offense).

Additionally, “[e]ven a total failure . . . to
identify the defendant on one occasion goes only to the weight of that person’s
testimony, not its admissibility.”  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986) (en banc).  Based on the State’s proffer of evidence,
the trial court did not err in concluding that a rational trier of fact could find
beyond a reasonable doubt that appellant committed the extraneous robbery.  We
conclude that the trial court acted within its discretion in allowing the
evidence of the extraneous aggravated robbery to be introduced before the jury.


We overrule appellant’s second issue.

B.                
Vandalism Involving Graffiti Depicting Gang Signs

 In his third issue, appellant argues that the
trial court abused its discretion by allowing the State to introduce evidence “that
Appellant spray painted graffiti [depicting gang signs] on the walls of an
apartment” without providing appellant notice as required by article 37.07.  

Article 37.07 provides, in part, that upon a finding
of guilt, evidence may be offered by either party “as to any matter” the trial
court “deems relevant to sentencing.” Tex. Code Crim. Proc. Ann. art. 37.07 §
3(a).  This evidence includes “the prior criminal record of the defendant, his
general reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried,” and “any other
evidence of an extraneous crime or bad act that is shown beyond a reasonable
doubt by evidence to have been committed by the defendant or for which he could
be held criminally responsible.”  Id.  Article 37.07 section 3(g)
provides for admission of extraneous offense evidence if the State gives timely
notice of its intent to use that evidence in the punishment phase of trial.  Id.
art. 37.07 § 3(g) (Vernon 2009).

Appellant contends that the State did not provide
sufficient notice of its intent to introduce evidence that appellant
spray-painted graffiti in a vacant apartment, and that the State’s open-file
policy does not constitute sufficient notice to comply with article 37.07’s
notice requirement.  The State responds that it provided sufficient notice four
months prior to trial in its “initial notice of intention to use extraneous
offenses and prior conviction” and “specifically disclosed its intention to
‘introduce evidence of the Defendant’s membership, affiliation, and/or associat[ion]
with the street gang, Tree Top Pirus, and opinion evidence relating to the
purpose, characteristics, and activity of said street gang in Harris County,
Texas.’”  However, this notice does not indicate that the State intended to
introduce evidence “that Appellant spray painted graffiti [depicting gang signs]
on the walls of an apartment.”  

Assuming for the sake of argument that due to lack of
notice, the trial court erred in admitting evidence that appellant was involved
in spray-painting gang signs, any such error was harmless.  Error in admitting
evidence with insufficient notice under article 37.07, section 3(g) is
nonconstitutional error.  Apolinar v. State, 106 S.W.3d 407, 414 (Tex.
App.—Houston [1st Dist.] 2003), aff’d on other grounds, 155 S.W.3d 184
(Tex. Crim. App. 2005); Roethel v. State, 80 S.W.3d 276, 281 (Tex.
App.—Austin 2002, no pet.); see McDonald v. State, 179 S.W.3d 571, 578
(Tex. Crim. App. 2005).  A nonconstitutional harm analysis for statutory
violations is performed under Texas Rule of Appellate Procedure 44.2(b).  See
Tex. R. App. P. 44.2(b); Gray v. State, 159 S.W.3d 95, 97-98 (Tex.
Crim. App. 2005). 

To assess nonconstitutional errors, we examine whether
the purpose of the statute or rule violated was thwarted by the error.  Roethel,
80 S.W.3d at 281 (citing Ford v. State, 73 S.W.3d 923, 925-26 (Tex.
Crim. App. 2002)).  The purpose of article 37.07, section 3(g) is to avoid
unfair surprise and to enable a defendant to prepare to answer the extraneous
offense evidence.  Apolinar, 106 S.W.3d at 414-15; Roethel, 80
S.W.3d at 282; Nance v. State, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth
1997, pet. ref’d).  This analysis requires examining the record to determine
whether the deficient notice resulted from prosecutorial bad faith or prevented
the defendant from preparing for trial.  Roethel, 80 S.W.3d at 282. In
determining the latter, appellate courts look at whether the defendant was
surprised by the substance of the testimony and whether that affected his
ability to prepare cross-examination or mitigating evidence.  Id. 

Nothing in the record indicates that the State acted
in bad faith when it failed to comply with article 37.07’s notice requirement. 
There is no indication that the lack of sufficient notice was intended to
mislead appellant or prevent him from preparing a defense.  

Although appellant’s counsel claimed surprise and stated
he would ask for a continuance if the State introduced evidence that appellant
spray-painted gang signs on the walls of a vacant apartment, his claim of
surprise was questionable in light of his admission that the State provided him
with an offense report about the aggravated robbery of S.K. Rahmad — a pizza delivery
man who had been robbed after being called to the spray-painted vacant
apartment.  Appellant’s counsel acknowledged that the offense report contained
information that graffiti had been sprayed on the walls of the vacant apartment
at which the alleged Rahmad robbery took place.  Appellant’s counsel received
written notice of the State’s intent to introduce the aggravated robbery of
Rahmad as an extraneous offense four months before trial.  Appellant’s counsel also
acknowledged that the State had shown him the Rahmad robbery offense report
containing information regarding the graffiti at issue.

During the punishment phase, the State called Officer
Silva; he testified that he was called to an apartment complex and was then directed
to a vacant apartment that was spray-painted with gang-related signs.  Officer
Silva testified that State’s exhibits 20 through 36 were photos that accurately
depicted the spray-painted apartment.  Officer Silva also testified that he saw
spray paint cans in the apartment and that he called the fingerprint division
to determine if fingerprints could be lifted from the cans.  Appellant’s
counsel chose not to cross-examine Officer Silva.  Appellant’s counsel also
chose not to cross-examine Officer Truhan, who testified that she was able to
lift fingerprints off the cans found in the vacant apartment.

The State called a latent print laboratory
administrator, Officer Saldivar, who analyzed the fingerprints on the recovered
cans and determined that one of the fingerprints matched appellant’s
fingerprint.  Appellant’s counsel effectively cross-examined Officer Saldivar, eliciting
that Officer Saldivar “can’t tell by looking at a fingerprint on an object when
that particular fingerprint was put on” the object.[2]


 Appellant does not point to anything in the record
that would support the notion that his ability to mount an adequate defense was
hindered by the lack of notice; nor does appellant argue on appeal that his
ability to prepare cross-examination or mitigating evidence was affected by the
lack of notice.  Appellant has failed to make any showing of how his defense
strategy might have been different had the State notified him of its intent to
introduce evidence of the spray-painted gang signs during punishment, or how
his defense was “injuriously” affected by the State’s lack of notice.  See
Hernandez v. State, 176 S.W.3d 821, 825-26 (Tex. Crim. App. 2005).

Because the record does not demonstrate that the lack
of notice in this case was the result of prosecutorial bad faith, and because
the record shows that the lack of notice did not impair appellant’s ability to
prepare for the graffiti evidence or otherwise present a defense, we conclude
that the lack of notice did not affect appellant’s substantial rights.

We overrule appellant’s third issue.

C.               
Poor Grades

In his fourth issue, appellant argues that the trial
court abused its discretion by allowing the State to introduce evidence of the
poor grades he received in school because bad grades do not establish that
appellant has a bad character. 

Article 37.07 provides, in part, that upon a finding
of guilt, evidence may be offered by either party “as to any matter” the trial
court “deems relevant to sentencing,” and the evidence is not limited to “the
prior criminal record of the defendant, his general reputation, his character,
an opinion regarding his character, the circumstances of the offense for which
he is being tried.”  Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a).

Although it is questionable that appellant’s poor
grades were relevant to determining an appropriate punishment for appellant,
any asserted error in admitting evidence of appellant’s grades was not
harmful.  The erroneous admission of evidence is not constitutional error.  Ivey
v. State, 250 S.W.3d 121, 126 (Tex. App.—Austin 2007), aff’d, 277
S.W.3d 43 (Tex. Crim. App. 2009).  We use Texas Rule of Appellate Procedure 44.2(b)
to determine whether any alleged error warrants reversal.  Id.  Rule
44.2(b) provides that any non-constitutional “error, defect, irregularity, or
variance that does not affect substantial rights must be disregarded.”  Tex. R.
App. P. 44.2(b).  A substantial right is affected when the error had a
substantial and injurious effect or influence in determining the jury’s verdict. 
Haley, 173 S.W.3d at 518.  In assessing the likelihood that the jury’s
verdict was adversely affected by the error, we consider everything in the
record, including any testimony or physical evidence admitted for the jury’s
consideration and the nature of the evidence supporting the verdict.  Morales
v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

During the guilt-innocence phase of the trial, the
jury heard the complainant testify that appellant was angry and wanted to shoot
him when he found out that the complainant did not have any cash.  The
complainant testified that appellant stated, “I feel deceived.  . . . I am
going to shoot him.”  The complainant testified that appellant kept telling the
other gunman that he would shoot the complainant and that he did not care.  The
complainant also testified that the other gunman convinced appellant not to
shoot the complainant.  

During the punishment phase, the complainant’s
apartment complex manager, Kimberly Vanover, testified that she observed
appellant break into an occupied apartment two weeks earlier.  Vanover
testified that she tried to call the apartment complex security officer, but
appellant “snatched” her phone and ran away with it.  

During the punishment phase, appellant asked the jury
to consider giving him probation.  However, when his trial counsel asked
appellant to “tell the jury why they should consider giving” him probation,
appellant responded, “Cause I feel it really if I was to go to prison, it
wouldn’t make my [sic] better.  And I feel like when you get convicted of a crime,
you suppose to learn from it.  . . .  But if I was to go to prison, I don’t
even — I ain’t going to learn from it.  I am going to [be] more mad than
anything.”

Appellant also admitted having discipline problems in
school; he “was messing up bad . . . was getting into trouble, hanging out with
the wrong people.”  Appellant testified that his school discipline record included:
after school detentions, in-school restrictions, and short-term suspensions for
disruptive behavior; in-school restriction for breaching his school contract;
after school detention for tardiness; in-school restriction for theft;
short-term suspension for fighting; warning for harassment of a female student;
and long-term suspension for possession of drugs.  

Appellant testified that he was suspended for one
semester because he was caught with marijuana in school.  He testified that he
“just use[d] marijuana” every other day but that his mother did not know
because he would smoke outside.  Appellant testified that he “got caught with a
whole bunch of” Xanax pills in school.  He also testified that he was expelled
from school in January 2008 and sent to an alternative school.  Appellant’s
step-father confirmed that appellant got “in trouble for drugs;” he also
testified that appellant had a prior drug conviction.

Appellant showed no remorse for his actions. 
Instead, appellant claimed that the complainant lied when he testified that
appellant had pointed a gun at him and had threatened to shoot him.  When the
State asked appellant, “So, even though they found you guilty, you don’t
believe that you were guilty; and you are telling them that they were wrong?[,]”
appellant replied, “I know I wasn’t guilty.”  Also, in response to the State’s
question whether appellant agreed that probation would not be appropriate
punishment for an aggravated robbery, appellant replied, “If you did the crime,
I mean, you shouldn’t be afraid to go do the time basically, so.”

Lastly, the punishment range for an aggravated
robbery is five to 99 years’ confinement.  Tex. Penal Code Ann. §§ 12.32(a);
29.03(b) (Vernon 2003).  The jury assessed appellant’s punishment at ten years’
confinement — the low end of the punishment range.

Based on the record before the court, appellant cannot
demonstrate that he received a longer sentence or was harmed by the admission
of his poor grades.  Therefore, any error in the trial court’s admission of
this evidence was not reversible error.

    We overrule appellant’s fourth issue.

D.               
School Disciplinary Record 

In his fifth issue, appellant contends that the trial
court erroneously allowed the State to introduce appellant’s school
disciplinary record during the punishment phase of the trial because he was not
given notice of the State’s “intent to introduce evidence that [a]ppellant had
bad grades or school discipline problems” as required by Code of Criminal
Procedure article 37.07.

Contrary to appellant’s contention, the record before
the court establishes that the State filed the required article 37.07 notice
approximately four months before trial.  The notice disclosed the State’s
intention to introduce evidence that appellant “was expelled from Westside High
School in January 2008 for fighting, skipping classes, and disrupting classes,”
and that appellant “failed English 1A, English 2A, Spanish 1A, World History A,
and Introduction to Physics & Chemistry A at Westside High School for the
2006-2007 school year.”  Therefore, appellant’s fifth issue is without merit.

We overrule appellant’s fifth issue.

E.                
Jail Disciplinary Record

In his sixth issue, appellant argues that the trial
court erred by allowing the State to introduce appellant’s jail disciplinary
record during the punishment phase of the trial because he was not given notice
as required by article 37.07 of the Code of Criminal Procedure.  

The State responds that appellant’s argument is
without merit because appellant’s trial counsel admitted to the trial court
that he received notice of the State’s intention to introduce appellant’s jail
disciplinary record.  We disagree.

The State filed its notice of intention to introduce
numerous “extraneous offenses, wrongs, acts, and prior convictions;” the notice
did not list appellant’s jail disciplinary record as one of the items the State
intended to introduce.

During the punishment phase of the trial, appellant’s
trial counsel objected to the introduction of exhibits 37 and 38 based on a
lack of notice under article 37.07; the exhibits contained appellant’s jail
disciplinary record.  Trial counsel stated: “We also have notice issues on
[exhibits] 37 and 38, Your Honor.  On the 37[.]07 notice, they didn’t give us
notice that they intended to introduce evidence of a jail disciplinary problem
or of a — bad grades in Oklahoma.”  The State responded that “those records in
their entirety have been on record.  The State has given defense counsel a
notice of intent to use these business records and introduce them.”  The trial
court then asked appellant’s trial counsel: “Were you given notice of the
State’s intent to offer these exhibits?”  Trial counsel responded: “They did
file that notice and serve me with a copy.”

Trial counsel’s response is not an admission that he
received notice of the State’s intention to introduce appellant’s jail
disciplinary record.  Rather, trial counsel’s response indicates that he received
the State’s notice of intention as filed by the State — a notice that did not
include appellant’s jail disciplinary record as one of the “extraneous
offenses, wrongs, acts” it intended to introduce during the punishment phase.  

Accordingly, the State did not provide appellant with
notice of its intent to introduce appellant’s jail disciplinary record as
required by article 37.07, section 3(g), which provides for the admission of
extraneous offense evidence if the State gives timely notice of its intent to
use that evidence in the punishment phase of trial.  Tex. Code Crim. Proc. Ann.
art. 37.07 § 3(g).  Because the State failed to provide the required notice,
the trial court erred in admitting the evidence.   

As we have stated above, error in admitting evidence
with insufficient notice under article 37.07, section 3(g) is nonconstitutional
error.  Apolinar, 106 S.W.3d at 414; Roethel, 80 S.W.3d at 281; see
McDonald, 179 S.W.3d at 578.  A nonconstitutional harm analysis for
statutory violations is performed under Texas Rule of Appellate Procedure
44.2(b).  See Tex. R. App. P. 44.2(b); Gray, 159 S.W.3d at 97-98.


To assess nonconstitutional errors, we examine
whether the purpose of the statute or rule violated was thwarted by the error.  Roethel,
80 S.W.3d at 281 (citing Ford, 73 S.W.3d at 925-26).  The purpose of
article 37.07, section 3(g) is to avoid unfair surprise and to enable a
defendant to prepare to answer the extraneous-offense evidence.  Apolinar,
106 S.W.3d at 414-15; Roethel, 80 S.W.3d at 282; Nance, 946 S.W.2d
at 493. This analysis requires examining the record to determine whether the
deficient notice resulted from prosecutorial bad faith or prevented the
defendant from preparing for trial.  Roethel, 80 S.W.3d at 282.  In
determining the latter, we look at whether the defendant was surprised by the
substance of the testimony and whether that affected his ability to prepare
cross-examination or mitigating evidence.  Id. 

On cross-examination during the punishment phase of
the trial, the State admitted appellant’s jail disciplinary record into
evidence showing that appellant lost seven days of visitation and commissary
privilege for assaulting another inmate.  The State, however, did not spend
much time questioning appellant regarding his jail disciplinary problems, and
appellant admitted getting into a fight with another inmate.  

Neither in the trial court nor on appeal did
appellant claim that he was surprised when the State proffered evidence of
appellant’s jail disciplinary record.  Nothing in the record suggests that
appellant’s ability to mount an adequate defense was hindered by the lack of
notice.  Appellant has failed to make any showing of how his defense strategy
might have been different had the State notified him of its intent to introduce
his jail disciplinary record during the punishment phase, or how his defense
was “injuriously” affected by the State’s lack of notice.  See Hernandez,
176 S.W.3d at 825-26.

We find no indication of bad faith in the State’s
failure to provide notice of its intent to introduce appellant’s jail
disciplinary record.  Although the State’s notice did not comply with article
37.07, section 3(g)’s requirements, there is no indication from the record that
the omission was intended to mislead appellant or prevent him from preparing an
adequate defense.

Because the record does not reveal that the lack of
notice in this case was the result of prosecutorial bad faith, and because the
record shows that the lack of notice did not impair appellant’s ability to
present a defense, we conclude that the lack of notice did not affect
appellant’s substantial rights.

We overrule appellant’s sixth issue.

Conclusion

The judgment of the trial court is affirmed.

 








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Frost,
Boyce, and Sullivan.

Publish
— Tex. R. App. P. 47.2(b).

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 









[1]
Appellant asserts the actual statement made to the venire panel was “in assessing
the sentence” and not “in a section of the sentence” as reflected in the
record.  Even if appellant were correct and this court could accept his
assertion as true, the difference in wording would not affect our analysis.





[2]
The State also called Officer Richards, who testified that appellant was
considered to be a member of the Tree Top Piru Blood Gang and was so listed in
the police gang database.  Appellant’s counsel effectively cross-examined
Officer Richards, establishing that any person could be documented as a gang
member in the police database “if enough people denounced” that person as a
gang member.  Appellant’s counsel elicited testimony that even counsel could be
placed in the police database “if enough people denounced” him “as a gang
member.”  Appellant’s counsel also established that appellant did not have a
tattoo indicating any gang affiliation, even though “gang members typically
have tattoos that . . . bare [sic] witness to their allegiance.”