PD-0964-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/25/2015 4:57:47 PM
Accepted 8/28/2015 11:22:43 AM
ABEL ACOSTA
CLERK

*Oral argument waived*

**PD-0964-15**

IN THE TEXAS COURT OF CRIMINAL APPEALS

OCZAVEONE JACKSON
*APPELLANT*

vs.

THE STATE OF TEXAS
*APPELLEE*

FROM THE FIFTH COURT OF APPEALS
CAUSE No. 05-14-00985-CR

APPEAL FROM CRIMINAL DISTRICT COURT No. 6 OF
DALLAS COUNTY, TEXAS, CAUSE No. F12-60601-X

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

August 28, 2015

ABEL ACOSTA, CLERK

## Ground for Review

Whether the trial court abused its discretion in permitting at the punishment phase of trial the introduction of evidence that Jackson was a member of a violent street gang.

# Table of Contents

Ground for Review ...................................................................................2

Table of Contents ....................................................................................3

Index of Authorities ...............................................................................4

Identity of Parties and Counsel ............................................................5

Statement Regarding Oral Argument ....................................................6

Statement of the Case and Procedural History......................................7

Ground for Review ................................................................................10

The trial court abused its discretion in permitting at the punishment phase of trial the introduction of evidence that Jackson was a member of a violent street gang................................................................10

    I.    The trial court's error ................................................................10

    II.   The court of appeals's errors....................................................12

    III.    The court of appeals placed too high a burden on counsel to adequately preserve error ...............................................................13

    IV.    Gang evidence is only admissible if a connection is proven .15

    V.   The trial court's error affected Jackson's substantial rights ...17

    VI.    Conclusion .........................................................................20

Prayer ....................................................................................................21

Certificate of Service.............................................................................22

Certificate of Compliance .....................................................................22

# Index of Authorities

**Cases**

*Acevedo v. State,* 255 S.W.3d 162, 170 (Tex. App.—San Antonio 2008, pet. ref'd) ...................................................................................................20

*Benoit v. State,* 87 S.W.3d 668, 670 (Tex. App.—San Antonio 2002, pet. ref'd) ...................................................................................................20

*Casey v. State,* 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)..................17

*Dawson v. Delaware,* 503 U.S. 159 (1992) .............................................16

*Ford v. State,* 73 S.W.3d 923, 925 (Tex. Crim. App. 2002) ....................18

*Fuller v. State,* 829 S.W.2d 191, 197–98 (Tex. Crim. App. 1992) ....12, 15, 16

*Jackson v. State,* No. 05-14-00985-CR, 2015 WL 3899573 (Tex. App.—Dallas 2015) .............................................................9, 13, 15, 19

*King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) ...................18

*Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) ...................................................................................................18

*Lankston v. State,* 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)............14

*McCarthy v. State,* 65 S.W.3d 47 (Tex. Crim. App. 2001).......................19

*Motilla v. State,* 78 S.W.3d 352, 356 (Tex. Crim. App. 2002) .................20

*Sierra v. State,* 266 S.W.3d 72, 77 (Tex. App.—Houston [14th Dist.] 2008)......................................................................................................16

*United States v. Lemon,* 723 F.2d 922, 941 (D.C. Cir. 1983) .................15

**Statutes**

Tex. Pen. Code § 29.03(a).........................................................................8

**Rules**

Tex. R. App. P. 33.1 ................................................................................13

## Identity of Parties and Counsel

For Appellant Oczaveone Jackson:

> PAUL BRAUCHLE
> > *Trial counsel of record*
> 4131 N. Central Expressway, Suite 680
> Dallas, Texas 75204
>
> BRUCE ANTON
> BRETT ORDIWAY
> > *Appellate counsel of record*
> SORRELS, UDASHEN & ANTON
> 2311 Cedar Springs, Suite 250
> Dallas, Texas 75201

For Appellee the State of Texas:

> TOMMY ADAMS
> JOSH HEALY
> > *Trial counsel of record*
> DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
> 133 N. Riverfront Blvd.
> Dallas, Texas 75207
>
> MICHAEL R. CASILLAS
> > *Appellate counsel of record*
> DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

> CRIMINAL DISTRICT COURT NUMBER 6 OF DALLAS COUNTY, TEXAS
> THE HONORABLE JEANINE HOWARD PRESIDING

## Statement Regarding Oral Argument

Oral argument is waived.

## Statement of the Case and Procedural History

In the early morning hours of September 22, 2012, Oczaveone Jackson, Disheenee Woolen, and Sabrina Whittenburg were at a Red Roof Inn in Dallas in which Jackson rented a room. (RR4: 35, 37, 42, 86). At approximately 2:30 a.m., they decided they "needed some money," so Woolen called the complainant, whom she knew to be a pimp, and asked him to come pick her up from the hotel. (RR4: 43,86-88, 101, 106). In fact, Woolen was "set[ting] [Jackson] up to rob [the complainant]." (RR4: 43-44).

When the complainant arrived at the hotel, however, he refused to enter the room, instead insisting on waiting in his car. (RR4: 88, 90). Accordingly, Woolen went outside with her bags. (RR4: 44, 56, 90). As she did so, Jackson walked up to the side of the complainant's car and demanded the complainant empty his pockets. (RR4: 45, 90-91). The complainant refused, and hit Jackson in his "shoulder, like neck area." (RR4: 148). Jackson then shot the complainant in his arms, side, and groin. (RR4: 46, 91, 134). Despite this, the complainant was able to run to a nearby restaurant, where patrons called 9-1-1. (RR4:134-35). In the meantime, Woolen and Whittenburg fled. (RR4:48, 93).

Police identified Jackson upon recovering a copy of his driver's license from the hotel registration desk and viewing the hotel's video surveillance recordings. (RR4: 35, 37, 44-45, 88, 157). The following day, Whittenburg gave the police a statement, too. (RR4: 68). Jackson was subsequently arrested and interrogated. After initially denying involvement in the offense, Jackson gave a video recorded statement admitting his role in the robbery. (SX107). The complainant then identified Jackson in a photo lineup. (RR4: 138-39).

A grand jury indicted Jackson on November 5, 2012, for the aggravated robbery of James Boyd. (CR: 9); *see* TEX. PEN. CODE § 29.03(a). Specifically, the indictment alleged that, on or about September 22, 2012, Jackson "intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause[d] bodily injury to [the] complainant by shooting [him] with a firearm." (CR: 9). Accordingly, the indictment further alleged that Jackson "used and exhibited a deadly weapon." (CR: 9).

Jackson pleaded not guilty. (RR3: 15). His trial began on June 23, 2014, with voir dire, with the State's case following on June 24 and 25.

(RR3; RR4; RR5). Immediately after the State rested, the defense did so as well, arguing that the State in its case in chief had not met its burden. (RR5: 31, 51-61). The jury was not persuaded and found Jackson guilty. (RR5: 68; CR: 267). Upon Jackson's election to have the court set his punishment, it then sentenced him to life imprisonment. (RR8: 26; CR: 245, 267).

Jackson timely filed notice of appeal on June 30, 2014. (CR: 266). Before the Fifth Court of Appeals, he argued that the trial court abused its discretion in permitting at the punishment phase of trial the introduction of evidence that he was a member of a violent street gang. *Jackson v. State*, No. 05-14-00985-CR, 2015 WL 3899573 (Tex. App.—Dallas 2015). The court overruled the ground, though, and affirmed Jackson's conviction in an opinion filed June 25, 2015. *Id.* No motion for rehearing was filed.

**Ground for Review**

> The trial court abused its discretion in permitting at the punishment phase of trial the introduction of evidence that Jackson was a member of a violent street gang.

◆  ◆  ◆

## I.   The trial court's error

At the punishment phase of Jackson's trial, the State introduced evidence of other crimes Jackson had committed. (RR5: 80-81; RR6: 27-29, 37, 46, 100-01, 106-138). Additionally, Dallas Police Officer Greg Ceraso testified that, based on several tattoos on Jackson's body, Jackson was a member of the Park Row Posse, a "Crip" gang located in the southern part of Dallas. (RR6: 76-96). Ceraso described the gang as an over thirty-year-old, predominantly African-American gang which engaged in "anything from simple traffic violations to aggravated robberies to as high as murders, carjackings, [as well as] anything that will create revenue for them," including "drug dealing." (RR6: 79). As Ceraso began to further explain the "history about the gang, just some background to it," defense counsel unsuccessfully lodged a relevancy objection. (RR6: 79). The court granted defense counsel a running objection, and Ceraso then testified:

10

> Back in 2008 we saw something that we had never seen before where—our traditional gangs, your Bloods and your Crips, they would not like each other. They wouldn't get along or anything like that. Back in 2008 we saw where Bloods and Crips were coming together for the sole purpose of money. That was their whole benefit, all they cared about was money. There would be groups from all over the city that would join these groups and there would be offsets. We call that gang a hybrid bang gang because you have your hybrid gang where you have your Bloods and your Crips that are coming together and they're doing your robberies and everything like that, which is not traditional gangs.

(RR6: 80).

On cross-examination, Ceraso conceded that he did not know when Jackson acquired the tattoos, which were virtually the only evidence of any gang membership. (RR6: 97). Ceraso further confirmed that he would in fact consider anyone with a tattoo who had committed a traffic offense to be a potential gang member. (RR6: 93). The State then used Jackson's tenuous gang affiliation to ask for a life sentence.

> What do we know about when he has structure? The gang affiliations, the 187s, the Star of David, the Park Row Boys. Judge, these tattoos show you what he wants you to think about him, what he wants the people in TDC when he's walking around with his shirt off, they know not to mess with him, because he is a Crip, he's a Park Row Boy, and he's a savage. Not only do his tattoos show what this man is about, every crime that he has been committing since 12 years old show what Oczaveone Jackson is.

(RR8: 24).

11

## II. The court of appeals's errors

On appeal to the Fifth Court of Appeals, Jackson argued that the trial court abused its discretion in permitting at the punishment phase of trial the introduction of evidence that Jackson was a member of a violent street gang. In Jackson's case, there is no evidence to suggest that he was a gang member before he was arrested. At best, the evidence showed that Jackson had gang-related tattoos. Moreover, the evidence was insufficient to show that appellant intended to further the illegal activities of the gang. Accordingly, the gang membership testimony was of little relevance to sentencing, and the trial court abused its discretion in determining otherwise. (Ap. Br. at 10-14) (citing *Fuller v. State*, 829 S.W.2d 191, 197–98 (Tex. Crim. App. 1992) (gang membership evidence irrelevant—and thus, inadmissible—because it was "woefully insufficient" and "legally inadequate to connect Appellant with the gang in any meaningful way")).

The court rejected Jackson's appeal on every possible basis. First, the court found Jackson's issue unpreserved, because "[i]nstead of objecting to the State's introduction or use of the gang-related evidence, appellant merely objected to the relevancy of Cerasco's contextual tes-

timony describing an alliance formed in 2008 between the Crips and Bloods for the purposes of making money." *Jackson v. State*, No. 05-14-00985-CR, 2015 WL 3899573, *1 (Tex. App.—Dallas 2015). "Furthermore," the court noted "[e]vidence of membership in or affiliation with a gang would fall under the type of 'bad acts' relevant to sentencing" admissible under article 37.07 of the Code of Criminal Procedure. *Id.* at *2. Finally, the court reasoned that, in light of the admitted evidence of Jackson's criminal history, he could not have been harmed by the complained-of evidence. *Id.*

The court was wrong on each basis.

### III. The court of appeals placed too high a burden on counsel to adequately preserve error

Rule 33.1(a)(1)(A) of the Texas Rules of Appellate Procedure provides:

> As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.

TEX. R. APP. P. 33.1. In order to satisfy Rule 33.1's requirement, "all a party has to do... is to let the trial judge know what he wants, why he

thinks himself entitled to it, and to do so clearly enough for the judge to understand him." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). This standard is "not to be implemented by splitting hairs in the appellate courts." *Id*.

Only by "splitting hairs" could the court of appeals conclude that Jackson's counsel failed to satisfy the fairly minimal requirements of Rule 33.1. His complaint to the trial court was that Jackson's gang's history was not relevant. (RR6: 79). A reasonable judge in the trial judge's position would have understood defense counsel's argument to concern the relevancy of acts Jackson was not involved in. And that's just what Jackson complained of on appeal—that the gang membership evidence was irrelevant (and thus, inadmissible) because there was "woefully insufficient" and "legally inadequate" evidence to connect Jackson to it "in any meaningful way." (Ap. Br. at 12). The court of appeals, with its overly strict application of Rule 33.1, broke with the spirit of *Lankston* and putting too great a burden on defense counsel. Accordingly, Jackson first respectfully requests this Court to grant this petition so that it may reverse the court of appeals's holding that Jackson's complaint was not preserved for review.

## IV. Gang evidence is only admissible if a connection is proven

As to the merits of Jackson's complaint, the court of appeals rejected the ground merely because "[e]vidence of membership in or affiliation with a gang would fall under the type of 'bad acts' relevant to sentencing" admissible under article 37.07 of the Code of Criminal Procedure. *Jackson*, 2015 WL 3899573 at *1. But, as repeatedly noted, this Court has held gang membership evidence to be nonetheless inadmissible where it was "woefully insufficient" and "legally inadequate to connect Appellant with the gang in any meaningful way." *Fuller*, 829 S.W.2d at 197–98. And here, the State failed to connect Jackson to any gang membership.

In *Fuller*, this Court applied the test articulated in *United States v. Lemon*, 723 F.2d 922, 941 (D.C. Cir. 1983), which set forth that membership evidence may not be admitted at punishment unless the evidence is sufficient to establish that the defendant is a member of the group at issue, the group's aims are illegal, and the defendant intended to further those illegal aims. *Fuller*, 829 S.W.2d at 197-98. Because the only evidence offered to show Fuller's connection with a prison gang was the report of an inmate "whose inarticulate and rambling testimo-

ny is almost impossible to decipher," this Court held that, at best, the inmate's testimony suggested that the defendant once mentioned the gang in conversation and "that he might have expected it to furnish him protection while in prison." *Id.* at 197-98. Accordingly, this Court held:

> [P]roof in the abstract of that organization's beliefs and activities was ultimately irrelevant to any issue at the punishment phase of its trial. Without other evidence *sufficient for a rational finding that Appellant was actually a member of such organization or that he subscribed to its cannon of violence*, the testimony in question did not increase the probability that he would be violent in the future.

*Id.* (emphasis added). This Court also observed that "proof of an organization's violent practices is not ultimately relevant to the sentencing of a specific individual without proof of that individual's membership in the organization." *Id.* at 196 n. 2 (discussing *Dawson v. Delaware*, 503 U.S. 159 (1992)). In *Sierra v. State*, 266 S.W.3d 72, 77 (Tex. App.—Houston [14th Dist.] 2008), for example, the court found that the trial court did not err in admitting the testimony of a police officer during the punishment phase because the officer testified to his familiarity with the gang and his opinion that the defendant was a member.

In Jackson's case, there was insufficient evidence to show that he was a gang member before he was arrested. In fact, the State presented

no evidence that any of Jackson's conduct was gang-related. At best, the evidence showed that Jackson had gang-related tattoos. Those tattoos, however, cannot be used to show that Jackson was a violent gang member, as the State argued. Moreover, the evidence was insufficient to show that appellant intended to further the illegal activities of the gang. Accordingly, the gang membership testimony was of little relevance to sentencing, and the trial court abused its discretion in determining otherwise. *See, e.g., Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) (A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion). The court of appeals was wrong to approve of the error simply because, *if* connected, gang evidence is admissible. Accordingly, on this basis, too, Jackson respectfully requests this Court to grant this petition, here so that it may reverse the court of appeals's holding that the gang evidence was admissible.

## V.    The trial court's error affected Jackson's substantial rights

Pursuant to Texas Rule of Appellate Procedure 44.2(b), non-constitutional error that does not affect the substantial rights of the defendant must be disregarded. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining

17

the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

When the admission of evidence is at issue, a substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Ford v. State*, 73 S.W.3d 923, 925 (Tex. Crim. App. 2002). Or conversely, a substantial right is not affected when the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight affect. *Id.* Neither party has a burden to prove or disprove harm; rather, it is the responsibility of the reviewing court, once it concludes there was error, to determine whether the error affected the judgment. *Id.* It must do so without the benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial. *Id.*

In Jackson's case, the court of appeals held that his substantial rights were not affected because of the other, non-disputed punishment evidence:

> [E]vidence was presented to the trial court of appellant's extensive criminal history, beginning with burglary of a habitation at twelve years of age and including a carjacking appellant committed immediately after robbing and shooting

18

Boyd. Under these circumstances, we fail to see how appellant could have been harmed by the complained of evidence.

*Jackson*, 2015 WL 3899573 at \*2. In so doing, however, the court ignored that the State specifically used Jackson's tenuous gang affiliation to ask for a life sentence:

> What do we know about when he has structure? The gang affiliations, the 187s, the Star of David, the Park Row Boys. Judge, these tattoos show you what he wants you to think about him, what he wants the people in TDC when he's walking around with his shirt off, they know not to mess with him, because he is a Crip, he's a Park Row Boy, and he's a savage. Not only do his tattoos show what this man is about, every crime that he has been committing since 12 years old show what Oczaveone Jackson is.

(RR8: 24). And the court then obliged. (RR8: 26). The State's emphasis on Jackson's supposed gang membership, then, quite clearly affected his substantial rights. *See, e.g.*, *McCarthy v. State*, 65 S.W.3d 47 (Tex. Crim. App. 2001) (error in admitting defendant's statement to police detective in capital murder prosecution was not harmless; state relied on statement extensively, both during its case-in-chief and during its closing arguments, to establish defendant's guilt of capital murder either as a party or as a conspirator, and to paint defendant as an unrepentant liar and set out her cruel and greedy motive for killing victim, and there was reasonable likelihood that state's use of statement materially af-

19

fected jury's deliberations); *Benoit v. State*, 87 S.W.3d 668, 670 (Tex. App.—San Antonio 2002, pet. ref'd) (error in admitting inadmissible statement made by murder defendant to police officer was not harmless; State relied on statement extensively, both during its case-in-chief and during its closing arguments, to establish defendant's guilt of murder, and there was reasonable likelihood that State's use of statement materially affected jury's deliberations). Only by ignoring the proper analysis did the court of appeals conclude otherwise. *See, e..g, Acevedo v. State,* 255 S.W.3d 162, 170 (Tex. App.—San Antonio 2008, pet. ref'd) ("In accordance with Rule 44.2(b), our analysis of the harm associated with the erroneous admission of expert testimony considers everything in the record, including the evidence admitted, the jury instructions, the State's theory, defensive theories, closing arguments, and voir dire.") (citing *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002)). Accordingly, on this basis, as well, the court of appeals was wrong to deny Jackson's argument on appeal, and Jackson respectfully requests this Court to grant this petition so that it may hold as much.

## VI.   Conclusion

The court of appeals rejected Jackson's appeal on three separate bases. Each one, though, was incorrect. This Court should thus grant this petition so that it may reverse the judgments of the court of appeals and trial court and remand this case for a new trial.

## Prayer

For the foregoing reasons, Jackson respectfully requests this Court to grant this petition for discretionary review.

Respectfully submitted,

/s/ Bruce Anton
BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com

/s/ Brett Ordiway
BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Counsel for Appellant*

21

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and State Prosecuting Attorney on August 25, 2015.

/s/ Bruce Anton
Bruce Anton

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this brief contains 2,466 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century.

/s/ Bruce Anton
BRUCE ANTON



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00985-CR

### OCZAVEONE JACKSON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-1260601-X**

# MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Francis

Oczaveone Jackson appeals his conviction for aggravated robbery with a deadly weapon. After the jury found him guilty of the charged offense, the trial court assessed punishment at life in prison. In a single point of error, Jackson contends the trial court abused its discretion by admitting certain evidence during punishment. We affirm the trial court's judgment.

On September 22, 2012, appellant robbed and shot the complainant, James Boyd, at a Red Roof Inn in Dallas. Boyd identified appellant in court as the man who robbed and shot him. The two women who were with appellant that night each testified he robbed and shot Boyd. In addition, the State offered appellant's video-taped statement in which he admitted he robbed and shot Boyd. After hearing this and other evidence, the jury found appellant guilty.

During punishment, the State introduced photographs of appellant's tattoos. Detective Greg Cerasco of the Dallas Police Department identified fourteen photographs of appellant and

noted details of the tattoos that indicated appellant was a member of a gang. Cerasco also said several of appellant's tattoos were consistent with tattoos belonging to members of the Park Row Posse, a subset of the Crips gang located in South Dallas. When Cerasco began detailing the history of an alliance between Crips and Bloods beginning in 2008, appellant's trial counsel stated, "[w]e object to this testimony in that it's not relevant to 2014." Although the trial court overruled the objection, appellant was granted a running objection to the testimony on the history. Cerasco went on to testify that appellant's tattoos were also consistent with membership in this hybrid gang of Crips and Bloods, known as the "Get Money Boys."

In his sole issue on appeal, appellant contends the trial court's admission of gang-related evidence was reversible error because it was not relevant and, therefore, was improperly considered by the trial court.

To preserve a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion stating "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1). When an appellant does not timely object to the admission of evidence, he fails to preserve the issue for review. *Mays v. State*, 318 S.W.3d 368, 391−92 (Tex. Crim. App. 2010). And the complaint raised on appeal must comport with the objection lodged at trial. *See Guevara v. State*, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003) (appellant failed to preserve any error regarding the admission of evidence because objection at trial did not comport with complaint raised on appeal).

After reviewing appellant's sole issue, we conclude he waived the issue because he did not make a timely and specific objection to the admission of the gang-related evidence and, when he did object, his complaint below differs from the one raised in his appellate brief. *See* TEX. R.

APP. P. 33.1(a)(1)(A); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). Instead of objecting to the State's introduction or use of the gang-related evidence, appellant merely objected to the relevancy of Cerasco's contextual testimony describing an alliance formed in 2008 between the Crips and Bloods for the purposes of making money. Appellant did not object when the State sought to admit photos of appellant's tattoos or when Cerasco described the gang-related significance of appellant's tattoos or the types of criminal activities consistent with those engaged in by gang members or associates. Appellant's relevancy objection addressed only the testimony about the 2008 alliance between two gangs; thus, the objection was insufficient to preserve error, if any. Under these circumstances, we conclude appellant has waived this issue.

Furthermore, under article 37.07 of the Texas Code of Criminal Procedure, a trial court has broad discretion to admit evidence the court deems relevant to sentencing, including evidence of prior crimes, reputation, character, or the circumstance of the offense. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West Supp. 2014); *see Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009). Evidence of membership in or affiliation with a gang would fall under the type of "bad acts" relevant to sentencing, and article 37.07 allows the introduction of such evidence to show the defendant's character. *See Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995). Finally, evidence was presented to the trial court of appellant's extensive criminal history, beginning with burglary of a habitation at twelve years of age and including a carjacking appellant committed immediately after robbing and shooting Boyd. Under these circumstances, we fail to see how appellant could have been harmed by the complained of evidence. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's sole issue.

We affirm the trial court's judgment.


/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
Tᴇx. R. Aᴘᴘ. P. 47.2(b)

140985F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

OCZAVEONE JACKSON, Appellant

No. 05-14-00985-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F12-60601-X.
Opinion delivered by Justice Francis, Justices Lang-Miers and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of June, 2015.